[Civ. No. 3712. Third Appellate District.—June 18, 1929.]

FLOYD G. STERNES et al., Respondents, v. SUTTER BUTTE CANAL COMPANY ·(a Corporation), Appellant.

466

Isaac Frohman and Seth Millington for Appellant.

Arthur Coats for Respondents.

MONCUR, J., *pro tem.*—This is an appeal from the judgment of the Superior Court of Sutter County after trial by jury wherein plaintiffs were awarded damages by reason of the construction of certain canals across their lands. This case has been before this court before and in an opinion rendered by this court (61 Cal. App. 737 [216 Pac. 66]) the facts are fully stated. Therefore, it is deemed unnecessary in this opinion to restate the facts out of which this litigation has proceeded. Following the decision of this court a second trial was had and as a result thereof a jury awarded to plaintiffs compensation for the lands taken in the said action, the acreage thereof being 5.18 acres, amounting to the sum of $1036, and damages to the lands not taken, being for so-called severance damages, seepage, etc., amounting to the sum of $8,196. The law of the case as settled on the former appeal so far as values and damages to the land not taken are concerned seems to have been closely followed, but it is contended by appellant that the values and damages

awarded are excessive and not in conformance with the evidence in the case. With the exception of the evidence of the plaintiff Floyd G. Sternes, the values fixed by plaintiff's witnesses are less than the value per acre for the land taken as awarded by the jury. In connection, however, with the amount of the award in this respect we will quote particularly from the testimony of plaintiff Floyd G. Sternes. This testimony is as follows:

"Q. Do you know the market value of this land? A. Very closely. You meant at that time? Q. Yes. Taking it as to the first day of December, 1919? A. Yes, sir. . . . Q. Taking it as of December 1st, 1919, and before the construction of the ditches and canals shown upon that map by the Sutter Butte Canal Company, what, in your opinion, would be the market value of that land? . . . The Court: The highest price it would bring for cash in the open market at that time, at a public sale. Mr. Millington: And giving a reasonable time to find a purchaser. The Court: With counsel's explanation as to what the question should be you can reframe it. Mr. Coats: All right. What was, in your opinion, the value of that land, considering its value, and the price that could be obtained in the open market, and giving the seller a reasonable time to make the sale, for cash? A. As a whole? Q. Yes? A. I should say two hundred and fifty dollars an acre. . . . Mr. Coats: Q. What, in your opinion, was the reasonable value of the remainder of the tract of land not included in these ditches, taking the same things into consideration, the price that you could have obtained therefor in the open market for cash, and giving the seller a reasonable time to obtain that price, after the construction of these ditches? A. I was not able to sell it."

The latter answer by order of the court was stricken out. The following then occurred: "The Court: What would it be, if you had a reasonable time to make the sale—what could it have been sold for? A. About a hundred dollars an acre. Mr. Millington: How much? A. One hundred dollars an acre."

It appeared also from the testimony of Mr. Sternes, particularly on cross-examination, that he had in contemplation a subdivision of the property, but a fair reading of the record indicates that his valuation of $250 per acre was not based upon subdivision valuations. ▮ It seems to be the

idea of appellant that in the testimony of respondents' witnesses to a very large extent at least sufficient foundation was not shown for their testimony to warrant the court in permitting it to go to the jury. However, a careful examination of the record shows that these witnesses were familiar with the land and the uses to which it could be adapted, were owners of lands and were familiar with the general situation in the immediate vicinity. The testimony of defendant's witnesses in respect to values did nothing more than create a conflict in the evidence. The jury heard the evidence and weighed the testimony. We are satisfied that so far as values are concerned, unless it can be found that other matters of evidence which we will now note materially affect the verdict, the finding of the jury in respect to values and compensation must stand. In this connection we will now refer to a stipulation and testimony of a sale on foreclosure of the property originally involved herein and to the amount received therefor on such foreclosure sale.

Preliminarily, it is to be noted that the Savings Bank of Sutter County held a mortgage upon the lands owned by plaintiffs at the time of the commencement of this action. The Savings Bank of Sutter County was not originally made a party to the action, but subsequently on motion of defendant it was brought in. At the commencement of the second trial the action as against said Savings Bank of Sutter County was dismissed, but prior to said dismissal, after some discussion between counsel, a stipulation was entered into without objection on the part of the defendant, the colloquy between counsel in respect to said stipulation being as follows:

"Mr. Coats: So far as the bank is concerned, the plaintiffs are willing to stipulate that the mortgage was subsisting at the time the Sutter Butte Canal Company entered upon the land, and that the mortgage was for the amount specified in the Judgment Roll of the case of *Savings Bank of Sutter County, Plaintiff,* vs. *Floyd G. Sternes and Marian May Sternes, Defendants,* and which mortgage was previously introduced in evidence in that case, and that the land was sold under the foreclosure proceeding after these men had built their ditches across this land for the price of sixty dollars an acre or thereabouts; and if that is stipulated to we have no objection to their going out. Sixty dollars an

acre was the price paid by the bank for that land at the foreclosure proceedings.

"Mr. Frohman: The records show that they bought it in for the amount due on the mortgage. It was simply an offset to the amount due the bank, but I do not know how much it was an acre.

"Mr. Coats: The records show that the bank was the bidder at the sale, and whether they bought it in for the amount of the mortgage or not is immaterial, but they bid it in at approximately sixty dollars an acre, if you are willing to stipulate to that—all right.

"Mr. Frohman: For the amount of the judgment the bank held—we will stipulate to that. Nobody asks for any relief against the bank."

We particularly refer to this conversation amounting, in effect, to a stipulation dismissing the bank from the action for the reason that counsel for appellant predicate misconduct on the part of counsel for the plaintiffs in respect to argument before the jury in connection with this particular matter of the amount for which the property was sold under foreclosure and also predicate error on the part of the court in the refusing of certain instructions in connection therewith. Obviously, and we assume it is a matter of common knowledge that a sale of property under foreclosure is a forced sale. The court instructed the jury as follows:

"By 'Market Value' is meant, not what the owner could realize at a forced sale, but the highest price estimated in terms of money which the land would bring, if offered for sale in the open market with reasonable time in which to find a purchaser with knowledge of all the uses and purposes as to which it was adapted and for which it was capable, as shown by the evidence."

Also the court instructed the jury as follows at defendant's request:

"In determining what compensation may be payable to the plaintiffs on account of any damages which may have resulted from the construction of said ditches to plaintiffs' land not occupied by said ditches, you are not to indulge in speculation, surmise or conjecture. The law does not require the defendant to pay damages or compensation based upon speculation, surmise or conjecture.

"The uses to which land may be put and which may be considered in determining its value do not include remote and conjectural possibilities.

"Testimony as to what a witness may think is the value of plaintiffs' land based upon what it is assumed by him to be worth if it were sold in subdivisions for cash or on a deferred payment plan, must be disregarded by the jury. (*Sacramento etc. R. R. Co.* v. *Heilbron,* 156 Cal. 408-412 [104 Pac. 979].)''

The following instruction was requested by defendant, which was refused by the court:

"The price which the Savings Bank of Sutter County, the mortgagee of the plaintiffs' land, bid for said land on the sale thereof under the decree of foreclosure of its mortgage, is not to be considered by you in your determination of the value of said land at the time the defendant constructed or operated its ditches on plaintiffs' land.''

This instruction might well have been given, but in view of the instructions given by the court, particularly wherein they were told that they could not consider values at a forced sale, we are unable to see where any prejudice resulted to defendant by the refusal of the court to give this instruction. In respect to the claim made by appellant that counsel for plaintiffs in his argument to the jury was guilty of misconduct in referring to the price obtained on sale of the property through the foreclosure proceedings and the failure of plaintiffs to effect a sale of the property during the pendency of the foreclosure proceedings it need only be said that the bank as a party to the action and the foreclosure proceedings in connection with the bank's relation to the action were injected into this case on the motion of defendant and the stipulation in reference to the dismissal of the bank having been entered into without objection on the part of the defendant it is not now in a position to complain of any reference whatever in the argument of counsel for the plaintiff in connection with said foreclosure proceeding. We do not hold that this matter was properly admissible before the court or jury and we simply intend to say that by reason of its admission before the court and jury in connection with the circumstances disclosed by the record in this case defendant is in no position to complain thereof.

We are satisfied that in connection with the verdict and award of the jury no error of which defendant is entitled to complain is to be found in the record.

We will now consider the alleged counterclaim or cross-complaint of defendant concerning the agreements entered into between plaintiff Floyd G. Sternes and defendant. These agreements are quite thoroughly discussed in *Sternes* v. *Sutter Butte Canal Co.*, 61 Cal. App. 737 [216 Pac. 66], hereinbefore referred to, and we deem it unnecessary to lengthen this opinion by any further particular reference to said agreements. So far as the counterclaim or offset of the amount of $2,600 to any judgment by plaintiffs herein is concerned it should be specifically noticed that plaintiff Marian May Sternes did not sign either of said agreements. ■ The property owned by plaintiffs at the time of the commencement of this action was acquired by them subsequent to their marriage while they were living together as husband and wife and subsequent to the enactment of section 172a of the Civil Code of this state in 1917. It, therefore, was clearly community property and the amount recovered by plaintiffs by reason of the acts complained of in this case constituted their community property. But even under said section 172a plaintiff Marian May Sternes was neither a necessary nor proper party to the action. In the case of *McKay* v. *Lauriston,* 204 Cal. 557, at p. 563 [269 Pac. 519, at p. 522], it is said:

"At the time said real property was conveyed to plaintiff, section 172a of the Civil Code read as follows:

" 'The husband has the management and control of the community real property but the wife must join with him in executing any instrument by which such community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed, or encumbered; provided, however, that the sole lease, contract, mortgage or deed of the husband, holding the record title to community real property, to a lessee, purchaser or encumbrancer, in good faith without knowledge of the marriage relation shall be presumed to be valid; but no action to avoid such instrument shall be commenced after the expiration of one year from the filing for record of such instrument in the recorder's office in the county in which the land is situate.'

"In the recent case of *Stewart* v. *Stewart*, 199 Cal. 318 [249 Pac. 197], this court after an exhaustive review of the decisions of this court, as well as those from other jurisdictions where the community property law prevails, considered and determined the right of the wife in community property acquired under the laws in force in this state immediately following the adoption of said section 172a and the amendment in the same year of section 172 of the Civil Code, relating, in its amended form, to community personal property. In that case we held that under the laws of this state as in force in the year 1918, relative to the rights of the wife in community property acquired while such laws were in effect, the wife had no present vested interest in the community property during the continuance of the marriage relation, except that she might by resort to appropriate judicial remedies protect and safeguard the community property against the inconsiderate and fraudulent acts of the husband."

In the case of *Moody* v. *Southern Pac. Co.*, 167 Cal. 786 [141 Pac. 388], it is held that the husband has the like absolute power to dispose of the community property other than household goods and clothing, that he has of his own separate property, except that he cannot make a gift thereof without the consent of the wife. (Civ. Code, sec. 172.) "In general, the husband is the only party entitled to sue in respect to community property and the wife is neither a necessary nor a proper party to such suit." In *Caputo* v. *Fusco*, 54 Cal. App. 191, at page 192 [201 Pac. 604], it is said: "Elisa Caputo, the wife, was not a proper party plaintiff in the action to recover the community property. (*Spreckels* v. *Spreckels*, 116 Cal. 339, 349 [58 Am. St. Rep. 170, 36 L. R. A. 497, 48 Pac. 228]; *In re Burdick*, 112 Cal. 387, 393 [44 Pac. 734].)"

We are satisfied that the trial court was in error in excluding from consideration of the jury the contracts for the payment of the $2,600 as agreed to by plaintiff Floyd G. Sternes and the defendant was entitled to offset the sum of $2,600 against any amount recovered against it. Counsel for respondents herein to avoid the necessity of a new trial and to terminate this litigation, if possible, by way of stipulation in his brief makes the following statement:

"The court might allow the counterclaim and credit it upon the judgment, and then allow interest thereon from the date of the going in possession, and in case the court did this, respondents expressly waive all right or claim to greater aggregate judgment of principal and interest than that rendered by the jury.

"If the court should allow the counterclaim and credit it upon the aggregate judgment rendered, and also determine that plaintiffs are not entitled to interest on the balance, we also stipulate that the judgment in such case may be so modified. . . ."

■ We are satisfied that respondents are not entitled to recover interest on the judgment appealed from herein prior to the date of its entry. But in accordance with the stipulation as above set forth the judgment is modified by deducting from the amount thereof, to wit, $8,196, the sum of $2,600, leaving the amount to be recovered under the said judgment $5,596, and as so modified the judgment is affirmed.

Thompson (R. L.), J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 18, 1929, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 15, 1929.

All the Justices present concurred.