[Sac. No. 4583. In Bank.—February 25, 1933.]

TENNIE A. EDMONDS, etc., Respondent, v. GLENN-COLUSA IRRIGATION DISTRICT (a Corporation), Appellant.

Hankins & Hankins for Appellant.

A. G. Bailey and Grant & Bailey for Respondent.

SEAWELL, J.—The trial court gave judgment against Glenn-Colusa Irrigation District, a public utility, in the sum of $750. The court further held that the ditch and canal which was built through plaintiff's lands was carelessly and

negligently operated and maintained, but granted a reasonable time within which to correct what it declared to be negligent and careless operation, and further provided that if the nuisance was not abated within a reasonable time the plaintiff would be entitled to an injunction restraining and enjoining the defendant "from maintaining and operating said canal in a negligent and careless manner so as to create a nuisance upon the lands of the plaintiff".

The damage claimed to have been suffered was caused by seepage of water from said ditch and canal into and upon plaintiff's lands. Defendant has appealed from the award of damages, and from the decree restraining the operation of said ditch conditionally or otherwise, and specifies a number of matters as errors and grounds which call for a reversal of the judgment. In addition to a failure of the evidence to support the findings, it is urged by defendant canal or ditch district that every matter of controversy in the present action, particularly as to the question of damage to the same lands from seepage waters, was directly put in issue by the pleadings and litigated at the trial and determined by the judgment in a condemnation proceeding commenced in 1924 by the Williams Irrigation District against Tennie Edmonds, and concluded in 1926; that said condemnation proceeding was brought for the purpose of determining the value of the land actually taken and the damage that would accrue to the balance not taken by reason of the severance, and especially the damages that would accrue to said lands from seepage waters as a result of the construction and maintenance of the kind of a ditch that was to be constructed. The question of seepage water being the only item of damage urged by plaintiff, it is earnestly contended by defendant ditch district that plaintiff is estopped by the judgment of 1926 from relitigating the question by the rule or doctrine of *res judicata*, which defendant herein invokes. Defendant also adds to the above ground the following: that the defendant has acquired a prescriptive right to continue to carry the water through plaintiff's premises subject to ordinary seepage by reason of a five-year use employed by it; that any seepage shown was the result of necessary, natural and ordinary operation of the ditch, and is not actionable; that if any negligence is imputable, it was the

negligence of the employees of the district, and not charge-
able to the district; and that the order of injunction is void.

■ If the claim of the defendant as to the issue of dam-
ages by reason of seepage waters is within the doctrine of
*res judicata,* then the cause is brought to an end, and a
decision on any other point becomes unnecessary.

The doctrine of *res judicata* is stated in a very carefully
considered definition in 15 Ruling Case Law, pages 950, 951,
in the following language:

"Briefly stated, this doctrine is that an existing final judg-
ment or decree rendered upon the merits, and without fraud
or collusion, by a court of competent jurisdiction, upon a
matter within its jurisdiction, is conclusive of the rights of
the parties or their privies, in all other actions or suits in
the same or any other judicial tribunal of concurrent juris-
diction, on the points and matters in issue in the first suit.
To adopt the language of the English court in announcing
the doctrine in an early case, and which has been frequently
repeated by the courts, the judgment of a court of concur-
rent jurisdiction, directly upon the point, is as a plea, a
bar, or as evidence, conclusive, between the same parties,
upon the same matter, directly in question in another court.
In speaking of this rule and the distinctions which appear
therein, it has been said that this brief but comprehensive
summary furnishes a rule for every case that any complica-
tion of circumstances can produce."

Glenn-Colusa Irrigation District became the successor of
all the rights of said Williams Irrigation District in a con-
solidation agreement at about the time said action in con-
demnation was commenced, and it was substituted in the
place of the Williams Irrigation District in said proceeding
prior to the time of trial. The history of the subject of
controversy between the parties herein is important, and may
be briefly told.

Condemnation proceedings were commenced by defendant's
predecessor against Tennie A. Edmonds on May 29, 1924,
and the plaintiff therein was let into possession of the strip
of land, 100 feet in width, sought to be taken for canal
purposes upon complying with the provisions of article I,
section 14, of the state Constitution. The canal, which was
of the ordinary dirt construction, was approximately 25 feet
in width at the land surface, and approximately 15 feet in

width at the bottom. The embankments were set back 10 feet from the channel edge on each side. The physical structure of the canal has not in anywise been changed. The hearing on the condemnation proceeding was had on December 16, 1924. The canal had not then been put to use. The question of damages from seepage waters seems not to have been specifically discussed at the trial, although the character of the soil through which the canal ran was quite minutely described by Mr. Charles de St. Maurice, an engineer called by the defendant, who evinced much familiarity with the soil and the area in which the canal was constructed. In fact he testified to the quality of the soil, the clay compactness in general, and the sandy and loam areas in the proximity of the creek beds. The construction of the ditch as to the heights of embankments, provisions for overflow outlets for the protection of the lands of plaintiff herein, and the value of the land taken and damage done to that not taken, were, however, the chief matters of controversy in the case. Both sides having rested, the trial court filed a written opinion in which it gave notice that it would assess the value of the land actually taken, consisting of 4.29 acres of unimproved land, at $1,072.50, and award $1790 as severance damages. The entry of judgment was delayed awaiting the settlement of a surveying difficulty. In the meantime the water was turned into the canal, and it was used to its full capacity. The operation of the canal throughout the spring of 1925, and as late as June, according to the witnesses called by the land owner, showed seepage waters standing upon Mrs. Edmonds' lands in ponds here and there. Engineer St. Maurice again made an examination of the lands in suit, and by boring holes and making such other tests as are used to detect seepage waters, fully prepared himself to become a witness on behalf of Mrs. Edmonds. On May 4, 1925, Mrs. Edmonds wrote to the manager of the Glenn-Colusa District a letter in which she called the attention of the district to water standing on her alfalfa field from two to three inches in depth at varying distances from the ditch, rendering the ground so wet that it would not sustain the weight of a person, much less the weight of teams and machinery.

Before the court's written opinion in the condemnation proceeding announcing its intention of awarding damages in

the sum of $2,852 took the form of a judgment, Mrs. Edmonds brought an action against the Glenn-Colusa District on account of damages sustained by reason of seepage waters in the sum of $20,000. In her complaint she alleged that the height of the water carried through the canal was above the level of the surrounding country, and during the irrigating season water from said canal had seeped and would continue to seep out of said canal and flood and damage her lands and the whole thereof, and render them unfit and hád then rendered them unfit for agricultural purposes; that by reason of the injury done to the growing crops and to the land itself, and future damage from seepage waters, she would suffer damage in the sum of $20,000. Inasmuch as the judgment in the condemnation proceeding had not been entered, a motion on her behalf to set aside the submission of said cause was noticed to be heard on June 22, 1925, and was granted on October 2, 1925. The motion was expressly made upon the grounds and for the reasons as set forth in her affidavit that during the month of May, 1925, she had learned that all of her lands were filled with percolating and seepage waters from said canal, and that she had employed an engineer to investigate the same and was informed by him that her said tract of land would be entirely ruined by said waters seeping from said canal. She prayed that she be permitted to amend her answer by setting up the facts above outlined, and that a new trial be had on the issues raised by said amended answer, and for damages arising thereon. Her motion to amend by ''setting forth the damage done to her property by reason of seepage waters from the ditch constructed over and across her property'', and ''for leave to reopen said cause for the purpose of taking evidence upon said amendment to answer on the question of seepage waters only'' was granted, and she accordingly amended her answer. The cause came to trial. Witnesses, both expert and laymen, were examined as to the issues involved, including the question of damages from seepage waters, present and prospective. The trial court, in company with the attorneys, inspected the premises, and rendered its decision awarding the same sum as to the value of the land taken, to wit, $1,072, as indicated in its tentative opinion, but increased the amount above its tentative award of damages by reason of severance and the ''construction and operation

of the improvement in the manner proposed by the plaintiff'', by $400, thereby increasing this item of damage from $1790 to $2,190.

Mrs. Edmonds not only did not appeal from the above award, but she waived findings and accepted the judgment. Said judgment was filed January 22, 1926.

From a reading of the evidence, it would seem that the instant action is but another proceeding to increase the damages fixed by the trial court in its judgment in the condemnation proceeding of 1925, which has long since become final. That the question of damages from seepage waters, present and prospective, was practically the sole issue in that trial, cannot be seriously controverted. The engineer employed by Mrs. Edmonds, who has had a long experience as an engineer with canal construction in the locality, made extensive soil borings, and water surveys; took levels and elevations, and prepared maps and blue-prints showing cross-sections and surface and subsurface conditions, and, to use his own words, made a study of the entire situation. His testimony, as well as the testimony of other witnesses offered by both parties, was specifically directed to the issue of damages arising from actually demonstrated and speculative damages which had accrued or were likely to accrue.

The plans and specifications of the work to be done were put in evidence, and no contention is made that the canal as completed does not conform to said plans and specifications. The record does not contain any evidence as to any structural changes made in the canal since its construction, or as to any structural defects. The canal or ditch is maintained and operated as are other irrigation ditches of a similar character, and no specific act or acts of negligent operation have been pointed out. The most that was shown is that the water in the canal was occasionally raised in order to conduct water to farm lands by laterals to a height of some 12 or 14 inches above its height in 1925, at which time some 10½ acres of plaintiff's lands along or near the canal became permeated with waters which the trial court, in view of the issues presented, undoubtedly found in the condemnation proceeding, was seepage from said canal. Even the respondent's engineer admits that ''So far as the earth work itself is concerned, whether it be constructed by dragline or by teams or the methods generally used here

[referring to the particular locality in which the canal is constructed], that is constructed in the general and usual manner, but to the entirety of the structure, as I said before, it is incomplete.''

The incompleteness which the witness refers to is the caring for seepage waters, which was patent to respondent and to the witness at the time damages were fixed at the condemnation proceeding, and the remedy, as explained by him, consisted of the installation by the defendant canal company by one of three systems which he thought would relieve the respondent from the effects of seepage waters. They are: first, the construction of an interception drainage ditch; second, pumping from wells; third, lining the canal with concrete. The construction of the ditch is of the usual and ordinary type of irrigation ditches existing generally in northern California.

None of the three above suggested preventive measures were mentioned in the plans and specifications, which were received in evidence at the trial of the condemnation proceeding in 1925, at which trial it was shown that seepage waters had then affected more than ten acres of respondent's lands. That the probability of its annual recurrence, and, indeed, the danger of its developing into a permanent condition were within the actual contemplation of respondent is clearly shown by respondent's repeated assertions before and at said trial. Besides, respondent's engineer testified at said trial that the soil was quite pervious to water, which was additional notice as to anticipated seepage. (*Sternes* v. *Sutter Butte Canal Co.*, 61 Cal. App. 737 [216 Pac. 66]; Id., 99 Cal. App. 465 [278 Pac. 921].) In fact, pools of water claimed to be caused from seepage were then standing on Mrs. Edmonds' lands. The checking of the canal at certain places to raise the water level for the purpose of irrigating farm lands does not seem, under the circumstances, to have been an unreasonable use of the canal, but an incident to its use. If seepage was more likely to occur under such conditions, it would not seem that any particular adjacent owner of land would have the right to demand that the checking be done at such points as would divert seepage waters from her lands to the lands of another, especially in a case, as here, where plaintiff had had her day in court as to the damage she would sustain by reason of seepage

waters. No question is made as to overflow or surface waters.

■ There can exist no question as to the soundness and justness of the rule that damages are recoverable in this class of cases where they are caused unnecessarily by negligent and improper construction of an irrigation ditch or canal, or from negligent or improper maintenance. The authorities cited by plaintiff amply sustain that proposition. The question here is whether a public utility operating a dirt irrigation ditch of the usual and ordinary construction, such as the ditch in the instant case, maintained in the usual manner, can be compelled to lay out a large sum of money to prevent such damages as were shown to inevitably follow its construction and operation, and for which compensation was provided in the condemnation proceeding brought to determine said damages, and upon refusal so to do may be compelled to pay damages for injury to crops which the land owner may annually or occasionally plant near the banks of said ditch in the hope that they may by chance escape anticipated danger. As said in *Middlekamp* v. *Bessemer Irrigating Ditch Co.*, 46 Colo. 102 [103 Pac. 280, 23 L. R. A. (N. S.) 795], the result of such a rule would mean in most cases that the cost of means to prevent the seepage would be far in excess of the value of the property so damaged, even in cases where compensation for damages previously had been provided.

The rule governing the right to recover damages caused by seepage waters from irrigation projects, as laid down by numerous decisions of this state and other jurisdictions, estops plaintiff from maintaining the present action. The rule as announced in *Sternes* v. *Sutter Butte Canal Co.*, 61 Cal. App. 737 [216 Pac. 66, 69], and approved in *Sutro Heights Land Co.* v. *Merced Irr. Dist.*, 211 Cal. 670, 693 [296 Pac. 1088], citing supporting decisions, is in the following language:

"In *Denver City Irr. Co.* v. *Middaugh*, 12 Colo. 434 [21 Pac. 565, 13 Am. St. Rep. 234], the court thus expresses its views: 'In assessing damages in condemnation proceedings for lands taken for the purpose of constructing a ditch or reservoir thereon, injuries likely to result from seepage and leakage from such canal or reservoir would naturally be among the first items to occur to a jury.' Further: 'An

examination of the reported cases shows that there is no substantial difference in the general rules applicable to the assessment of damages in condemnation proceedings, as announced by the courts of last resort, but in the application of such rules to particular cases the same uniformity has not been observed; still no case has been called to our attention which by any fair construction can be held to be in conflict with the conclusion that damages for seepage and leakage should have been determined in the first proceeding.'

"In the more recent case of *Farmers' Reservoir & Irr. Co.* v. *Cooper,* 54 Colo. 402 [130 Pac. 1004], the supreme court of Colorado uses the following language: 'In condemnation proceedings all damages, present and prospective, that are the natural, necessary or reasonable incident of taking the property sought to be condemned, must be assessed.' It was there held that seepage, and damages resulting from seepage, constituted an incident to be considered by the court or jury whenever land was taken for a right of way to construct a canal."

▉ Neither the complaint, findings nor judgment make a single specific allegation or finding of negligence, but in the broadest terms allege and find that the canal was so "negligently and carelessly operated as to cause the damage to plaintiff's crops". No complaint is made as to faulty or imperfect construction of the canal. The evidence is not sufficient to support the general finding of negligence. The damage complained of is but the natural, necessary and reasonable incident to the use and operation of said canal, and plaintiff, having exhausted her rights in the first action, cannot prevail in the second action. In passing, we take note of the opinion of the learned trial court, which is inserted in the reporter's transcript. It makes the following observation:

"From the amount of the award and the circumstances of the second hearing, I cannot believe that the award of $400 was intended to cover the question of seepage for all time and to the extent of covering all plaintiff's lands." Said $400 does not represent the full amount of the award, but the increased amount allowed after a full consideration of the entire damages, from which allowance no appeal was taken. We have no other means of knowing what the trial court that viewed the premises and heard the evidence meant

except by the matters disclosed by an examination of the record. The evidence as to the damage from seepage waters was conflicting, but the question was fully litigated and solemnly adjudged. The condemnation proceedings were pleaded in the present action as an estoppel of plaintiff's asserted claims. Whether the award of damages was low or excessively high is immaterial to this action. The policy of the law requires that litigation be brought to an end, and that parties in the enforcement of their rights must take the steps provided by law. "A former judgment between the parties to an action is conclusive in all subsequent actions involving the same questions, not only as to matters actually decided in the former controversy, but as to all matters belonging to the subject of the controversy and properly within the scope of the issues which also might have been raised and determined." (*Southern Pac. Co.* v. *Edmunds*, 168 Cal. 415 [143 Pac. 597, 598]; *Curtis* v. *Upton*, 175 Cal. 322 [165 Pac. 935]; *Philbrook* v. *Newman*, 148 Cal. 172 [82 Pac. 772]; *Estate of Harrington*, 147 Cal. 124 [81 Pac. 546, 109 Am. St. Rep. 118].) It is none the less a bar if it is erroneous. (*Lamb* v. *Wahlenmaier*, 144 Cal. 91 [77 Pac. 765, 103 Am. St. Rep. 66].)

The question as to whether the defendant has acquired an easement as to the right to discharge water upon plaintiff's land is not wholly without force, but inasmuch as we have considered the case upon its merits, a consideration of that question and others of a somewhat technical character becomes unnecessary.

The judgment is reversed.

Shenk, J., Langdon, J., Preston, J., Curtis, J., and Waste, C. J., concurred.