[L.A. No. 29862. In Bank. Sept. 20, 1972.]

RUTH MARIE BUSICK, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD,
ALBRIGHT EXPRESS COMPANY et al., Respondents.

[L.A. No. 29863. In Bank. Sept. 20, 1972.]

ALLSTATE INSURANCE COMPANY, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD and
EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY
OF WISCONSIN, Respondents.

(Consolidated Cases.)

**COUNSEL**

Alpern & Vallier, Dintzer, Rosen & Zax, Daniel L. Dintzer and Cary A. Rosen for Petitioner in No. 29862.

Zonni, Ginocchio & Taylor and Marco J. Zonni for Petitioner in No. 29863 and Respondent in No. 29862.

Rupert A. Pedrin, Gabriel L. Sipos, Lionel K. Hvolboll, Samuelsen, Bolson, Whitehead & Benes and C. Ringwalt for other Respondents.

## OPINION

**SULLIVAN, J.**—In these consolidated proceedings, presented by separate petitions upon a single record, petitioner Ruth Marie Busick (hereafter petitioner) seeks review and annulment of the opinion and decision after reconsideration, and petitioner Allstate Insurance Company (hereafter Allstate) seeks review and annulment of the order denying reconsideration of the Workmen's Compensation Appeals Board (hereafter Board).[1]

We first set forth the facts giving rise to the claim. In February 1967 petitioner was hired as a bookkeeper by Albright Express, owned by A. Chase Albright as a sole proprietor.[2] Mrs. Albright kept the company's books and sometimes signed the payroll checks. In May 1967, Joseph Rasbidoski began working for the company as a salesman and dispatcher. The company also employed drivers and other office personnel.

In the spring of 1968, petitioner and Rasbidoski began to have personal difficulties with the Albrights, and by the following July were making plans to form a partnership and start their own trucking business.

On Friday, August 9, 1968, petitioner informed Mrs. Albright that she wanted to leave the company because of the tensions of her job. In response, Mrs. Albright suggested that petitioner take a week or two of vacation to reconsider her decision. Petitioner agreed. However, she and Ras-

---

[1]Petitioner's application for adjudication of claim named Albright Express Company (hereafter Albright Express) as her employer and both Employers Mutual Liability Insurance Company and Allstate Insurance Company as said employer's insurance carriers. As noted, both petitioner and Allstate seek review of the Board's decision and order for reasons we detail *infra*.

[2]The record discloses that Mr. Albright operated the business and Mrs. Albright assisted. There is nothing in the record indicating that the business was a partnership. Mrs. Albright referred to it as a "husband and wife deal" ("Our contract was our marriage license"). She testified however that the business was not in both names but was "shown" "[a]s Albright Express, A. Chase Albright." The workmen's compensation insurance policy issued by Employers Mutual Life Insurance Company and all bills for premiums were made out to "Albright Express, A. Chase Albright, proprietor." The subsequent compensation policy issued by Allstate is not in the record before us. The trucks were registered variously to Mrs. Albright, Mr. Albright, or to Albright Express. Neither of the Albrights received a salary. Mrs. Albright stated that "[w]e took a drawing" but that she did not "draw separately" from her husband. Apparently one check was drawn for the two of them for the household but the record is silent as to whom it was made payable.

bidoski proceeded to carry out their plans for a new business. Within a few days they established the J.R.L. Trucking Company and purchased three trucks for it. Immediately thereafter Rasbidoski quit his job with Albright Express and about the same time two of Albright's truck drivers also quit to work for petitioner's new business. The J.R.L. Trucking Company then commenced hauling operations, acquiring some of Albright's customers who transferred their business to the new firm.

Petitioner, Rasbidoski and the truck drivers were owed wages by Albright Express and upon inquiry were told that Mr. Albright required them to pick up their final payroll checks in person at his office. On August 23, 1968, petitioner and Rasbidoski went there together. As they walked up to the establishment, they were confronted by Mr. Albright, who asked, "Are you all prayed up?" He then shot petitioner and Rasbidoski and killed himself. Each of the two former employees was seriously injured.

Petitioner sought benefits under the workmen's compensation laws upon the theory that she had sustained an injury arising out of and in the course of her employment by Albright Express when she went to be paid for her past services. She also brought a civil action against Mr. Albright's executrix to recover damages for assault and battery. We proceed to set forth the pertinent chronology of all of these proceedings upon which, as we shall explain, the main issue before us turns.

On September 17, 1968, petitioner filed with the Board an application for adjudication of claim. On April 11, 1969, she commenced a civil action for damages against Mr. Albright's executrix.[3] On October 3, 1969, a trial referee of the Board issued findings and award, finding that petitioner's injury did not arise out of and occur in the course of the employment with Albright Express, awarding petitioner reimbursement for certain medical-legal costs against Allstate, and ordering that petitioner take nothing further against the express company or Allstate. On November 18, 1969, the Board granted petitioner's petition for reconsideration. On *April 14, 1970,* in the civil actions for damages brought against Mr. Albright's estate by petitioner and Rasbidoski and consolidated for trial, the court, sitting without a jury, entered a judgment[4] in favor of "plaintiffs jointly" in the amount of $500,000 general damages and $150,000 punitive damages.[5] Notice of entry of judgment was mailed to the parties by the clerk

---

[3]Petitioner's action was consolidated for trial with a similar action brought by Rasbidoski. Both actions were brought in the Superior Court of Los Angeles County. We take judicial notice of these records pursuant to Evidence Code, section 452, subdivision (d).

[4]Findings of fact and conclusions of law were waived by the parties.

[5]The present record does not disclose what, if any, part of this judgment has been satisfied.

of the court on the same day. (See Code Civ. Proc., § 664.5.) No appeal was taken and on June 15, 1970, said judgment became final. (See Cal. Rules of Court, rules 2(a), 45(a); Code Civ. Proc., § 12a.) Meanwhile, in the workmen's compensation proceeding, on *May 6, 1970,* the Board issued its opinion and decision after reconsideration which in effect affirmed the findings and award of the trial referee.[6] The instant petitions for a writ of review followed.

### *The Busick Petition*

The positions of the parties in respect to this petition may be summarized as follows. Petitioner contends that the Board's decision that her injury did not arise out of and occur in the course of her employment is without any support in the evidence. She argues that the act of receiving compensation for services is one within the course of employment, particularly when, as here, it is done pursuant to the direction of the employer. Allstate, on the other hand, contends that the shooting was the result of personal grievances and, therefore, not employment related; that, assuming petitioner returned to her former employer's place of business merely to obtain her paycheck, such act was not one within the course of her former employment; and that, in any event, the judgment of the superior court is res judicata on the issue of whether the assault by Albright on petitioner arose out of and occurred in the course of the employment. We have concluded that, as Allstate claims, the superior court judgment should be given res judicata effect precluding recovery before the Board and that, therefore, the decision of the Board should be affirmed. In view of this conclusion, we deem it unnecessary to reach the remaining issues.

"The doctrine of res judicata precludes parties or their privies from relitigating a cause of action that has been finally determined by a court of competent jurisdiction." (*Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807, 810 [122 P.2d 892]; see *Martin* v. *Martin* (1970) 2 Cal.3d 752, 758 [87 Cal.Rptr. 526, 470 P.2d 662].) We have said that the doctrine "rests upon the ground that the party to be affected, or some other with whom he is in privity, has litigated, or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction, and should not be permitted to litigate it again to the harassment and vexation of his opponent. Public policy and the interest of litigants alike require that there be an end to litigation." (*Panos* v. *Great Western Packing Co.* (1943) 21 Cal.2d 636, 637 [134 P.2d 242]; see generally Note,

---

[6]A petition for reconsideration filed by Albright Express and Allstate on May 25, 1970, was denied on June 11, 1970.

*Developments in the Law—Res Judicata* (1952) 65 Harv.L.Rev. 818.) As Witkin puts it, "The doctrine of *res judicata* gives certain *conclusive effect* to a *former judgment* in subsequent litigation involving the same controversy." (Original italics.) (4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 147, p. 3292.)

■ Generally speaking, under the above doctrine a valid final judgment, if in favor of the plaintiff, merges the cause of action in the judgment. (*Edmonds* v. *Glenn-Colusa Irr. Dist.* (1933) 217 Cal. 436, 445-446 [19 P.2d 502]; *Hatch* v. *Bank of America* (1960) 182 Cal.App.2d 206, 210 [5 Cal.Rptr. 875]; *California Nat. Supply Co.* v. *Porter* (1927) 83 Cal. App. 758, 761-763 [257 P. 161]; 4 Witkin, *supra*, Judgment, § 189, p. 3329; Rest., Judgments (1942) § 47),[7] and, if in favor of the defendant, constitutes a bar to any further suit on the same cause of action (*Panos* v. *Great Western Packing Co., supra,* 21 Cal.2d 636, 639; 4 Witkin, *supra,* Judgment, § 192, p. 3332; Rest., Judgments, *supra,* § 48).[8]

We proceed to analyze the effect of res judicata as a merger in the context of situations where the plaintiff has one of two mutually exclusive remedies for the enforcement of a single cause of action. We begin with section 64 of the Restatement of Judgments which states: "Where the plaintiff obtains judgment for the payment of money against the defendant in an action to enforce one of two or more alternative remedies, he cannot thereafter maintain an action to enforce another of the remedies." (See *Slater* v. *Shell Oil Co.* (1943) 58 Cal.App.2d 864, 869 [137 P.2d 713]; *United States* v. *Temple* (7th Cir. 1962) 299 F.2d 30, 32.) This rule implements the general principles of res judicata and prevents multiple recoveries by a plaintiff. In contradistinction to the doctrine of election of remedies, it gives conclusive effect to the *judgment* in plaintiff's favor, and does not consider plaintiff's conduct in choosing a remedy (Rest., Judgments, *supra,* § 64, com. a; § 65, com. f). ■ More specifically, when a plaintiff has two mutually exclusive remedies, and judgment is rendered in his favor giving him one of the remedies, he cannot thereafter maintain an action for the other. For example, if a plaintiff is entitled to damages for personal injuries either under a federal statute, if the injury arose out of employment in *interstate* commerce, or under a state statute, if it arose out of employment in *intrastate* commerce, a judgment for the plaintiff

---

[7]Restatement of Judgments section 47 states: "Where a valid and final personal judgment in an action for the recovery of money is rendered in favor of the plaintiff, [Par.] (a) the plaintiff cannot thereafter maintain an action against the defendant on the cause of action; but [Par.] (b) the plaintiff can maintain an action upon the judgment."

[8]Restatement of Judgments section 48 states: "Where a valid and final personal judgment is rendered on the merits in favor of the defendant, the plaintiff cannot thereafter maintain an action on the original cause of action."

under the federal statute would preclude a later action under the state statute and vice versa. (*Id.*, § 64, com. g.)

We point out, however, that this rule is not applicable where judgment is rendered for the *defendant* because the plaintiff has sought a remedy not available to him. In such cases, the plaintiff is not necessarily precluded from bringing another proceeding to obtain a recovery which is available.[9] For example, "[w]here the plaintiff is entitled to recover damages for personal injuries or for causing death in an action based upon a federal statute if, but only if, it arose out of an employment in interstate commerce, and he is entitled to recover such damages in an action based upon a State statute if, but only if, it arose out of an employment in intrastate commerce, and the plaintiff brought an action based upon the State statute, and judgment was given for the defendant on the ground that the employment was in interstate commerce, the plaintiff is not precluded from thereafter maintaining an action for the same injury based upon the federal statute. Conversely, a judgment for the defendant in an action based upon the federal statute on the ground that the employment was in intrastate commerce does not preclude the plaintiff from maintaining an action based upon the State statute."[10] (Rest., Judgments, *supra*, § 65, com. k; cf. *Kipbea Baking Co.* v. *Strauss* (E.D.N.Y. 1963) 218 F.Supp. 696, 699.) The rationale supporting the rule precluding a successful plaintiff's second action obviously does not apply when the first judgment is for the defendant.

We now consider Allstate's contention that the doctrine of res judicata precludes petitioner from recovering in the instant proceeding before the Board. ▮ Only a final judgment on the merits between the same parties or their privies and upon the same cause of action is entitled to the res judicata effect of bar or merger. (*Olwell* v. *Hopkins* (1946) 28 Cal.2d 147, 152 [168 P.2d 972].)

The finality of the judgment in which petitioner's cause of action has allegedly merged and its status as an adjudication on the merits are indisputable. The superior court judgment became final on June 15, 1970, when the time to appeal elapsed. Petitioner and Rasbidoski were awarded

---

[9]Restatement of Judgments section 65, subdivision (2) provides: "Where a judgment is rendered in favor of the defendant because the plaintiff seeks a form of remedy which is not available to him, the plaintiff is not precluded from subsequently maintaining an action in which he seeks an available remedy."

[10]If the judgment in the first action is rendered on the merits of the case, rather than the issue upon which the mutually exclusive aspect of the two remedies turns, the plaintiff cannot bring the second action. (Rest., Judgments, *supra*, § 65, subd. (1).)

money damages for defendant Albright's tortious behavior; the judgment determined the merits of all the issues in the case.

The requirement that the same parties or their privies be involved in both actions, which assures that every party has one day, but no party two days, in court, also is satisfied herein. In the instant proceedings before the Board, as in those brought in the superior court, petitioner seeks recovery from the estate of her former employer, A. Chase Albright. The fact that under Board procedure the compensation insurance carrier for the employer is also a named defendant has no effect on the executrix's role as a defendant in both proceedings.

It is also clear that the Board proceeding is brought on the same cause of action as that brought in the superior court. Although several different concepts have been advanced (see generally Note, *Developments in the Law — Res Judicata, supra,* 65 Harv.L.Rev. at pp. 824-831), we have defined a cause of action as "the obligation sought to be enforced" (*Panos v. Great Western Packing Co., supra,* 21 Cal.2d at p. 638) and we have indicated that there is but one cause of action for one personal injury by reason of one wrongful act. (*Panos v. Great Western Packing Co., supra,* 21 Cal.2d at p. 638; 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 34, p. 1717.) In the instant case, petitioner seeks redress for injuries suffered from one tortious act, the shooting incident. (See Rest., Judgments, *supra,* § 63, com. b.) Violation of one primary right in the instant case constitutes a single cause of action even though two mutually exclusive remedies are available. (*Wulfjen v. Dolton* (1944) 24 Cal.2d 891, 895-896 [151 P.2d 846]; *Hatch v. Bank of America, supra,* 182 Cal.App.2d at p. 211.)

There is no doubt that petitioner's cause of action is extinguished and "the prior judgment is *res judicata* on matters which were raised or could have been raised, on matters litigated or litigable." (Original italics.) (*Sutphin v. Speik* (1940) 15 Cal.2d 195, 202 [99 P.2d 652, 101 P.2d 497]; Rest., Judgments, *supra,* §§ 47, 48.) Therefore, it is irrelevant whether or not the issue of the injury arising out of and in the course of employment was specifically resolved by the superior court. Even if we assume that the injury were employment-related and the superior court's judgment incorrect on that issue, "[a]n erroneous judgment is as conclusive as a correct one."[11] (See *Panos v. Great Western Packing Co., supra,* 21 Cal.2d at p. 640; Rest., Judgments, *supra,* § 47, com. b.)

---

[11]The identity of the cause of action brought before the superior court and underlying the proceedings before the Board is in no way affected by the fact that the complaint in the superior court alleged only that Albright "did maliciously and wrongfully assault and cause a battery in and upon the body of plaintiff . . . ," without mention-

We conclude, therefore, that in the light of the foregoing principles the superior court judgment satisfies the criteria for the application of the doctrine of res judicata. Because petitioner was faced with two mutually exclusive remedies and received a money judgment by pursuing one of them, her claim merged in that judgment and she cannot seek the alternative remedy. Her situation in the instant case falls within the reach of Restatement of Judgments, section 64, which in our view sets forth the correct rule.

Petitioner challenges the application of these principles on the ground that the superior court judgment is void for lack of jurisdiction. She argues that since she filed her claim with the Board before she brought her civil action for damages the superior court should have stayed the action on its own motion pending determination by the Board of the jurisdictional question whether the injury was employment-related. ■ We recognize that the two tribunals in which petitioner sought relief have concurrent jurisdiction only to determine jurisdiction. In such a case, "[T]he tribunal first assuming jurisdiction retains it to the exclusion of all other tribunals in which the action might have been initiated." (*Scott* v. *Industrial Acc. Com.* (1956) 46 Cal.2d 76, 81 [293 P.2d 18]; *Jones* v. *Brown* (1970) 13 Cal.App.3d 513, 521 [89 Cal.Rptr. 651].) Once that decision has been made, jurisdiction becomes exclusive, and the final determination as to jurisdiction is res judicata before the other tribunal between the same parties and those privy to them. (*Scott* v. *Industrial Acc. Com., supra,* 46 Cal.2d at p. 83; *Jones* v. *Brown, supra,* 13 Cal.App.3d at p. 521.)

A party may obtain an order preventing the second tribunal from acting pending determination by the first tribunal of the jurisdictional question.[12] But the court need not on its own motion await the first tribunal's action. In *Taylor* v. *Superior Court* (1956) 47 Cal.2d 148 [301 P.2d 866], which petitioner suggests as authority for her position, we issued a writ of prohibition requiring the superior court to grant such a stay where the facts

---

ing an employment relationship. If the injury were employment-related, even though intentionally inflicted, jurisdiction would have been before the Board rather than in the superior court. (*Azevedo* v. *Abel* (1968) 264 Cal.App.2d 451, 458-460 [70 Cal. Rptr. 710].) The transcript of the superior court hearing indicates that the parties stipulated to the facts surrounding the incident, clearly mentioning that petitioner and Rasbidoski had been in Albright's employ and had returned to the Albright Express office on the fatal day to pick up their paychecks. Furthermore, according to petitioner's brief, depositions from the Board proceedings were submitted to the court so that it could review the facts for the presence of malice on the issue of punitive damages.

[12]By commencing both proceedings, as petitioner did, and staying the second for determination of the jurisdictional question by the first, a plaintiff's remedies are preserved against the running of the statute of limitations.

were similar to those in the instant case. In *Taylor,* however, the plaintiff took affirmative action to obtain the writ prohibiting further superior court proceedings. ■ Here neither party made any objection to bringing the superior court action to trial, and petitioner prosecuted that action to final judgment fully aware that the Board action had been commenced some seven months before the complaint was filed in the superior court. As Witkin makes clear, "In such event the priority of jurisdiction loses its significance; *the first final judgment* becomes conclusive, even though it is rendered in the action which was filed later in time. 'Where two actions involving the same issue are pending at the same time, it is not the final judgment in the first suit, but *the first final judgment,* although it may be rendered in the second suit, that renders the issue *res judicata* in the other court. . . .' (*Domestic & Foreign Pet. Co.* v. *Long* (1935) 4 C.2d 547, 562 . . . .)" (Original italics.) (4 Witkin, *supra,* Judgment, § 166, p. 3309.)

■ Petitioner contends that Allstate has waived the defense of res judicata. Since res judicata is not a jurisdictional defense, it may be waived if not timely raised. (*Domestic & Foreign Pet. Co., Ltd.* v. *Long* (1935) 4 Cal.2d 547, 562 [51 P.2d 73]; 4 Witkin, *supra,* Judgment, § 148, p. 3293.) However, the facts of the instant case do not support petitioner's contention. The defense was raised by Allstate before the Court of Appeal when it first became available. It could not have been raised earlier because the superior court judgment did not become final until June 15, 1970, which was after the Board had issued, on May 6, 1970, its opinion and decision after reconsideration.

My esteemed colleague in dissent speculates that petitioner's civil action for damages might have been one brought against Mr. Albright as her *co-employee,* who was a working member of a partnership. (Lab. Code, §§ 3359, 3601.) As previously mentioned (see fn. 2, *ante*) there is no evidence in the record indicating that Albright Express was a partnership. Nor was the contention now advanced by the dissenting opinion ever urged by petitioner in this court, or the Court of Appeal, or before the Board.

■ To recapitulate, petitioner invoked the jurisdiction of the Board to determine jurisdiction by filing her application for adjudication of claim in that proceeding prior to filing her complaint in her civil action in the superior court. But by prosecuting the superior court action to final judgment before the Board action was final, she allowed her cause of action to merge in that judgment. Whether or not the judgment of the superior court is based upon an erroneous conclusion on the question of "course of employment" is irrelevant. (*Panos* v. *Great Western Packing Co., supra,*

21 Cal.2d 636, 640.) That judgment clearly satisfies all criteria for the application of the doctrine of res judicata. Petitioner's cause of action merged therein and she is thereby precluded from seeking an additional remedy before the Board.

## The Allstate Petition

Allstate admits its coverage of Albright Express, but contends that Employers Mutual Liability Insurance Company of Wisconsin (hereafter Employers Mutual) was also Albright's compensation carrier on the date of the shooting, August 23, 1968, and should be jointly responsible for any recovery. Allstate urges that no effect should be given to the retroactive cancellation of the Employers Mutual policy issued to Albright. In light of our decision denying petitioner recovery in L.A. 29862, the question of coverage pertains only to the medical-legal costs awarded by the referee and affirmed by the Board.[13]

The Employers Mutual policy covering Albright Express was valid for the period from June 11, 1968, to June 11, 1969. However, Allstate issued a policy to Albright covering the same risks effective August 15, 1968, and, according to Mrs. Albright, Allstate's agent told her he would cancel the Employers Mutual policy. The Allstate agent never gave written notice of cancellation to Employers Mutual as the policy required. Soon thereafter, Employers Mutual learned of the new policy from the California Inspection Rating Bureau. On September 10, 1968, Employers Mutual cancelled its policy effective August 15, 1968, in accordance with the practice of cancellation by replacement. According to the testimony of experts, this practice is based on the first carrier's belief that it would be unsuccessful in collecting premiums for any period of dual coverage.

As heretofore noted, the referee awarded petitioner Busick medical-legal expenses, "[t]he amounts . . . to be adjusted between Busick and Allstate Insurance Company, failing which to be adjudicated herein upon petition and supporting documents." In his order dated October 3, 1969, the referee concluded, "It is found that the liability [for medical-legal costs] attaches to Allstate Insurance Company." Only petitioner Busick sought reconsideration of the referee's order. In its opinion and decision after reconsideration issued May 6, 1970, the Board expressly found Allstate

---

[13]Labor Code section 4600 provides for reimbursement of "expenses reasonably, actually, and necessarily incurred . . . to prove a contested claim" regardless of whether the claimant is ultimately successful. (*Subsequent Injuries Fund* v. *Industrial Acc. Com.* (1963) 59 Cal.2d 842, 844 [31 Cal.Rptr. 477, 382 P.2d 597]; *Garrett* v. *Workmen's Comp. App. Bd.* (1968) 258 Cal.App.2d 326, 328-329 [65 Cal.Rptr. 721].)

to be Albright Express's insurance carrier on the date of the incident, affirmed the award of medical-legal costs, and ordered the dismissal of Employers Mutual.

On May 25, 1970, within 20 days of the decision after reconsideration by the Board, Allstate petitioned for reconsideration of that decision, urging that the Board erred in not finding Employers Mutual jointly liable as compensation carrier. On June 11, 1970, the Board, sitting en banc, issued its opinion and order denying reconsideration. The Board observed that the petition was not timely filed because Allstate had not sought reconsideration of the referee's award of October 3, 1969, which granted medical-legal costs against Allstate. In said opinion and order denying reconsideration, the Board agreed with the referee's implied finding that, on the merits, Employers Mutual was not liable, having cancelled its policy effective August 15, 1968, several days before the shooting.

Allstate contends that its petition for reconsideration filed with the Board on May 25, 1970, was timely. The Board disagreed, indicating that Allstate should have sought reconsideration of the referee's award of medical-legal costs. Allstate claims such action was unnecessary because the referee did not specifically determine the issue of coverage, whereas the Board in its decision after reconsideration issued May 6, 1970, did expressly dismiss Employers Mutual as a party defendant.

We agree with the Board's and Employers Mutual's analysis that Allstate did not timely seek reconsideration. Although the referee's award did not specifically dismiss Employers Mutual, that award implied Allstate's sole responsibility at least for the medical-legal costs. The issue of coverage was before the referee, and "Any issue not . . . determined will be deemed decided adversely as to the party in whose interest such issue was raised." (Lab. Code, § 5815.) Furthermore, the referee specifically awarded the medical-legal costs against Allstate, putting Allstate on notice that it should have challenged that aspect of the award at once. We need not decide whether such a failure to seek timely reconsideration of the referee's award would have precluded Allstate's challenge to the broader issue of its sole responsibility for a general award, as that issue is now moot. Nor need we decide, on the merits, whether Employers Mutual remained Albright's insurer on the date of the incident even though it thereafter issued a post-dated cancellation of its policy.

We, therefore, reach these final conclusions. Since petitioner's cause of action arising out of the shooting incident merged in the judgment entered in her favor in the superior court, such final judgment upon

principles of res judicata precludes any recovery in the instant proceedings before the Board. Under the circumstances it is unnecessary for us to determine the question whether petitioner's injury was one arising out of and in the course of her employment by Albright Express. Although the Board denied recovery for another reason, namely that the petitioner's injury did not arise out of her employment, the result it reached was a correct one and must be affirmed. As to Allstate, the order determining it to be solely responsible for petitioner's medical-legal costs became final because of Allstate's failure to file a timely petition for reconsideration.

In L.A. 29862, the decision of the Board following reconsideration is affirmed. In L.A. 29863, the order denying reconsideration is affirmed.

Wright, C. J., McComb, J., and Burke, J., concurred.

**PETERS, J.**—I dissent.

In my view, the Workmen's Compensation Appeals Board erred in determining on the record before it that the injury was not sustained in the course of employment, and the order of the board should be annulled. The majority do not deal with this question but hold that Mrs. Busick's claim for workmen's compensation benefits has merged in her judgment for damages for personal injuries. The question of merger could not have been and was not determined by the board, and I believe that this court on the record before us cannot properly determine whether or not there has been a merger. To determine the question as the majority have done deprives Mrs. Busick of any opportunity to prove facts which might show that no merger has occurred. Because the majority decision is based on the merger doctrine I will treat that issue first.

The majority rely upon section 64 of the Restatement of Judgments which states: "Where the plaintiff obtains judgment for the payment of money against the defendant in an action to enforce *one of two or more alternative remedies,* he cannot thereafter maintain an action to enforce another of the remedies." (Italics added.) Comment f of that section, which is not discussed by the majority, sets forth the obvious limitation on the rule: "The rule stated in this Section is not applicable where the plaintiff is entitled to two or more remedies which are *cumulative* and *not alternative.* This is the situation where the plaintiff is entitled to two kinds of relief, and the relief sought in one action could not be obtained in the other action." (Italics added.)

Damages for assault and battery and workmen's compensation benefits cannot be obtained in the same forum in California, and the crucial ques-

tion presented is whether those remedies are cumulative or alternative in the circumstances of the instant case.

The subject is specifically dealt with by section 3601 of the Labor Code, which makes the remedies mutually exclusive in some situations but cumulative in others. The section provided in part at the times relevant here that where "the conditions of compensation exist," the compensation remedy is exclusive against the employer or any other employee of the employer "except that an employee . . . shall, in addition to the right to compensation against the employer, have a right to bring an action at law for damages against such other employee, as if this division did not apply, in the following cases: [¶] (1) When the injury or death is proximately caused by the willful and unprovoked physical act of aggression of such other employee. . . ."

Section 3359 of the Labor Code, which, like section 3601, is found in division 4 of the code, provides that a "working member of a partnership receiving wages irrespective of profits from such partnership is an employee under this division."

It is clear from the foregoing statutory provisions that Mrs. Busick, who was shot by Mr. Albright, has cumulative rather than alternative remedies and is not barred by the merger doctrine if Albright was a working member of a partnership receiving wages irrespective of profits. In other words, she would be entitled to both compensation benefits from the board and damages, and there could be no merger. On the other hand, if Albright was the sole proprietor of Albright Express Company, her remedies would be alternative, and, as the majority conclude, her claims would merge in the superior court judgment. The crucial question presented in determining the merger question thus is whether Albright was a working member of a partnership receiving wages irrespective of profits.

It must be recognized that the partnership question was not presented to the board and was not material at the time the board rendered its decision on rehearing.[1] At that time the question presented was whether Mrs. Busick's injury arose out of and occurred in the course of employment. If this question had been answered in the affirmative, as it should have been, she would have been entitled to benefits, and it would have been

---

[1] In the proceedings before the administrative agency a different partnership question was litigated. Petitioner claimed that J.R.L. Trucking Company was a partnership and that as a working member of the partnership receiving wages irrespective of profits she was entitled to workmen's compensation benefits from J.R.L.'s compensation insurer. After receiving substantial evidence as to whether J.R.L. was a partnership or a sole proprietorship owned by petitioner, it was concluded that J.R.L. was not a partnership, and the issue is not now before us.

immaterial whether or not Albright Express Company was a partnership. If the question had been answered in the negative, as the board erroneously answered it, she was not entitled to benefits, and again it would have been immaterial whether or not Albright Express Company was a partnership. Accordingly, it must be concluded that the partnership issue was not material and could not have been material in the case presented to the board.[2]

The partnership question only became material to these proceedings after the superior court judgment became final, and it did not become final until after these proceedings were pending on review. Since the partnership issue depends on factual determinations and since such determinations were not material to the proceedings before the board, it seems improper to me for the majority to proceed to make those determinations, as they have done, on the record before us. It seems to me that the proper procedure is to return the case to the board to permit it to take evidence to determine whether there has been a merger or whether Albright was a working member of a partnership receiving wages irrespective of profits.

There are a number of evidentiary matters which might bear on the issue of partnership which are not shown by the record before us because there was no reason to place them in evidence either before the board or the superior court. For example, documentary evidence such as the certificate of the Public Utilities Commission or the fictitious name statement of Albright Express Company might indicate that the firm was a partnership. Likewise, it would now be relevant whether Mrs. Albright is continuing the business after her husband's death as executrix of his estate or as surviving partner. But the point need not be belabored; it is clear to me that Mrs. Busick is entitled to a day in court where she can produce evidence on the partnership issue. The majority deny her that day in court. Contrary to the suggestion in the majority opinion (see p. 975), the problem is not whether Mrs. Busick will get two days in court; she will get two days in court only if she is entitled to them under section 3601 of the Labor Code; in any event she is entitled to one day in court to determine the partnership question; and the majority have denied her any days in court on that issue.

The denial of the right to present evidence on the partnership issue is especially unfair in that it is the majority and not Allstate which have pleaded, attempted to prove, made findings for the board, and then decided

---

[2] It is true that the partnership question could have been litigated in the superior court. However, the defendant did not raise the question of exclusive jurisdiction in the board, and thus there was no reason to raise the subsidiary question of partnership. The record of the superior court reflects no evidence on the partnership issue.

that the case is barred by the merger doctrine. Although Allstate has urged that the claim for workmen's compensation benefits is *barred* by res judicata, it has never relied on the merger doctrine or cited section 64 of the Restatement of Judgments. It has failed to do so even after we permitted further briefs on the res judicata issue at oral argument. The board made no findings as to sole proprietorship or partnership. If the majority are going to plead and prove defenses for Allstate and make findings for the board, the majority should at least give Mrs. Busick the opportunity to show that those defenses are factually inappropriate.

Moreover, if we were to decide the partnership issue on the record before us, I believe that we have to conclude that Mrs. Busick should prevail. There is no finding by the board or by the superior court that Albright Express Company was a sole proprietorship. Mrs. Albright testified that she did not know whether the operation should be called a partnership. The Allstate policy was issued to "A. Chase Albright and Wilhelmina Albright and/or Albright Express." It is clear that the business was operated by both of the Albrights. The majority state that "Mr. Albright operated the business and Mrs. Albright assisted" (p. 970, fn. 2), but the record nowhere shows that Mr. Albright owned the business as a sole proprietorship or that Mrs. Albright did not claim an ownership interest.[3]

Most important in this connection, however, is that, as shall be demonstrated later in this opinion, the injury arose out of and occurred in the course of the employment, and that in order to hold that the superior court judgment was not erroneous, this court should conclude that the action was proper under section 3601 on the basis of the working partner exception. In light of the fact that the injury arose out of and occurred in the course of employment, the majority's determination that a merger occurred is in effect a determination that the superior court did not have subject matter jurisdiction and that the superior court judgment was erroneous. The majority should not presume that the superior court judgment was erroneous but unless error is shown should presume it was correct.

For the foregoing reasons, it is my view that the record before us does not establish that a merger has occurred and that it is improper to dispose of the case on that basis. I thus turn to the contentions of the parties which the majority have not found it necessary to reach.

---

[3]The majority also point out that it is I who have raised the partnership question and that petitioner has not raised the issue. Since the majority is practicing law by pleading the merger doctrine which has never been urged by respondent, I feel it is appropriate to point out that the doctrine might not be applicable if petitioner were given her day in court on the issue.

The res judicata argument made by Allstate is that by awarding damages the superior court *impliedly* determined that the injury did not arise out of and occur in the course of employment. However, if this court is to imply findings, it should imply findings, if possible, which would make the judgment correct, not erroneous, in the light of the evidence before us, and this can be done in view of the clear evidence of employment relation only by implying findings that the co-employee exception in section 3601 of the Labor Code is applicable. Accordingly, this court should not imply the finding requested by Allstate.

The remaining question is whether the injury arose out of and in the course of employment by Albright Express Company.

The board found that the injury was not sustained in the course of employment "because it occurred long after the employment relationship was terminated." The board stated that Mrs. Busick resigned on August 9. Conceding that obtaining compensation for one's services is generally part of the employment relationship, the board implied that it might deem the employment relationship to have existed until August 16, the date on which Albright employees would usually be paid for services performed during the week ending August 9. The board reasoned that Mrs. Busick became a creditor, rather than an employee, after August 16.

The facts found by the board are a slim foundation for such conclusions. Although Mrs. Busick offered to resign on August 9, she was told to take her vacation (which she originally had intended to take the month before) to consider the matter. She acceded to this request, taking her vacation pay with her. She decided to try to start her own business during this vacation, but stated that she might well have returned to work had the new venture not panned out. Certainly it was not clear to her employer on August 9 that she had quit; he assumed she might be on vacation. Nor did the board find that vacationing employees usually interrupted their vacations in order to pick up their checks on the following Friday. The purpose of taking an extra vacation check, one would assume, is to tide one over until he does get back to town and/or the workplace. In any event, while Mrs. Busick was no doubt entitled to appear on the 16th and demand her paycheck, there was no understanding that she was to be paid on that date.

Whether she effectively quit her job on August 9 or should have been paid on August 16, however, is immaterial in the instant case. Obtaining compensation for one's services, even after those services have terminated, is a necessary and integral part of the employment relationship. (*Pacific Indem. Co. v. Ind. Acc. Com.*, 26 Cal.2d 509 [159 P.2d 625]; *Argonaut*

*Ins. Co.* v. *Industrial Acc. Com.,* 221 Cal.App.2d 140 [34 Cal.Rptr. 206].) The delay of a week in payment does not destroy that relationship. Mrs. Busick, instructed by her employer that checks could be picked up only by appearing personally at the business premises, was clearly within the *course of her employment* at the time of the shooting.[4] The contrary determination of the board should be rejected.

The board also found that the injury did not *arise out of the employment* "because it was a wilful act which was not traceable to an incident of the employment but was triggered by the tensions of trade warfare between business competitors."

An injury caused by a wilful (intentional) act arising out of and in the course of employment is, of course, compensable. (See, e.g., *California Comp. & Fire Co.* v. *Workmen's Comp. App. Bd.,* 68 Cal.2d 157 [65 Cal.Rptr. 155, 436 P.2d 67]; *State Comp. Ins. Fund* v. *Ind. Acc. Com.,* 38 Cal.2d 659 [242 P.2d 311]; *Western Greyhound Lines* v. *Industrial Acc. Com.,* 225 Cal.App.2d 517 [37 Cal.Rptr. 580].) The fact that the tortfeasor is the employer in no way bars compensation. (*Azevedo* v. *Industrial Acc. Com.,* 243 Cal.App.2d 370 [52 Cal.Rptr. 283]; *Carter* v. *Superior Court,* 142 Cal.App.2d 350 [298 P.2d 598].) The sole question here, therefore, is whether the shooting "arose out of" the employment relationship.

In *Madin* v. *Industrial Acc. Com.,* 46 Cal.2d 90, 94-95 [292 P.2d 892], we construed the meaning of the phrase "arising out of" the employment. There the employees, employed as 24-hour-a-day caretakers and managers, were injured when a bulldozer accidentally hit their house. The bulldozer was not under the control of the employer, nor was it used on the employer's property. Because the risk of injury to the employees was increased by having to remain in proximity to the uncontrolled bulldozer as a condition of employment, we held that the injury arose out of the employment. In doing so we set forth the following rule of construction: *"Where the injury occurs on the employer's premises, while the employee is in the course of the employment, the injury arises out of the employment unless the connection is so remote from the employment that it is not an incident of it."* (Italics added.)

---

[4]The board's reliance on *Robbins* v. *Yellow Cab Co.,* 85 Cal.App.2d 811 [193 P.2d 956], is misplaced. In that case husband and wife both worked for the same company. Company had a policy of allowing all wives, not only those who were employees, to pick up their husbands' paychecks. Wife was injured when she appeared during her off hours, asked for husband's paycheck, and fell while accompanying the payor to another office to get the check. Recovery was properly denied because she was injured in her role as *wife,* rather than her role as employee. In the instant case petitioner went to the Albrights' solely for the purpose of picking up her check.

In *California Comp. & Fire Co.* v. *Workmen's Comp. App. Bd., supra*, 68 Cal.2d 157, 160-161, we followed the *Madin* rule and allowed recovery where a saleswoman who entered private homes as a condition of employment, was killed by her ex-husband, who had rented an apartment specifically for the purpose of luring her there in the course of her employment and killing her. (See also *Wiseman* v. *Industrial Acc. Com.*, 46 Cal.2d 570 [297 P.2d 649]; *State Comp. Ins. Fund* v. *Indus. Acc. Com.*, 194 Cal. 28 [227 P. 168]; *Western Greyhound Lines* v. *Industrial Acc. Com., supra*, 225 Cal.App.2d 517.)

The instant case fits squarely within the *Madin* rule. Mrs. Busick was injured on the employer's premises while in the course of her employment. The causal connection between the assault and her employment was not remote. Albright shot her because she had left to form a competing business and had taken important accounts with her when she left. The risk of such injury was manifestly a direct result of her employment. As stated in *Carr* v. *Wm. C. Crowell Co.*, 28 Cal.2d 652, 656 [171 P.2d 5], " 'In bringing men together, work . . . causes frictions between them [and] creates occasions for . . . emotional flare-up. . . . These expressions of human nature are incidents inseparable from working together. They involve risks of injury and these risks are inherent in the working environment.' " If anything, the connection here is far more apparent than in the *Madin* or *California Comp.* cases.

In *Azevedo* v. *Industrial Acc. Com., supra*, 243 Cal.App.2d 370, 377, a test more stringent than that in *Madin* is enunciated, relying on *Globe Indemnity Co.* v. *Industrial Acc. Com.*, 2 Cal.2d 8, 12 [37 P.2d 1039], to the effect that compensation will be denied where the injury is "the result of personal grievances unconnected in any way with the employment."

The *Globe Indemnity* test has been severely undermined, if not impliedly overruled, by subsequent cases. (See *State Comp. Ins. Fund* v. *Ind. Acc. Com., supra*, 38 Cal.2d 659, 671, disapproving *Globe Indemnity* in part.) In *California Comp. & Fire Co.* v. *Workmen's Comp. App. Bd., supra*, 68 Cal.2d 157, the ex-husband's murder of his ex-wife was the result of a personal grievance unconnected with the employment. The *injury*, on the other hand, was held to be connected with the employment relationship, and therefore compensable. In *Western Greyhound Lines* v. *Industrial Acc. Com., supra*, 225 Cal.App.2d 517, cited with approval in *California Comp. & Fire Co.*, a female bus driver was assaulted during a paid layover when she refused to converse with a restaurant patron. Although the *grievance* was clearly unrelated to her employment, the injury was held to be related, since the driver's employment increased the

risk of this type of incident. *Globe Indemnity* should be disapproved insofar as it states that the grievance must be work related.

Even were the *Globe Indemnity* test given full application, however, Mrs. Busick's claim would not be barred. Her employer's grievance—starting a competing business, stealing accounts—was so obviously connected to the employment relationship that the matter bears no further discussion. "Even if, arguendo, the issue [were] debatable, we are bound by the fundamental principle that to effectuate the purposes of the compensation statute, all reasonable doubts as to whether an injury is compensable are to be resolved in favor of the employee." (*California Comp. & Fire Co.* v. *Workmen's Comp. App. Bd., supra,* 68 Cal.2d 157, 161.)

I am satisfied that for purposes of the Workmen's Compensation Law the injury was one "arising out of and in the course of the employment."

I would annul the order of the Workmen's Compensation Appeals Board in L.A. No. 29862. I agree with the majority that Allstate did not timely seek reconsideration and would affirm the order denying reconsideration in L.A. No. 29863.

Tobriner, J., and Mosk, J., concurred.

The application of petitioner Busick for a rehearing was denied November 1, 1972. Peters, J., Tobriner, J., and Mosk, J., were of the opinion that the application should be granted.