**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ADAM BROS. FARMING, INC., a
California Corporation; ICEBERG
HOLDINGS, L.L.C., a California
Limited Liability Corporation,
              *Plaintiffs-Appellants,*

v.

COUNTY OF SANTA BARBARA, a
political subdivision of the State
of California; SANTA BARBARA
COUNTY PLANNING AND
DEVELOPMENT DEPARTMENT, a
department of the County of Santa
Barbara; DANIEL H. GIRA, in his
official capacity of Deputy
Director of Santa Barbara County
Planning and Development
Department; ELIHU GEVIRTZ, in his
official capacity as Deputy
Director of Santa Barbara County
Planning and Development
Department; KATHERINE RINDLAUB,
in her official capacity as a
biological consultant for the
County of Santa Barbara; NOEL
LANGLE, in his official capacity as
Deputy Director of Santa Barbara
Zoning Administration Division,
              *Defendants-Appellees.*

No. 09-55315

D.C. No.
2:08-cv-05963-PA-
FFM

OPINION

Appeal from the United States District Court
for the Central District of California
Percy Anderson, District Judge, Presiding

7017

Argued and Submitted
April 5, 2010—Pasadena, California

Filed May 14, 2010

Before: Harry Pregerson and Robert R. Beezer,
Circuit Judges, and James L. Graham, Senior District Judge.*

Opinion by Judge Beezer

*The Honorable James L. Graham, Senior United States District Judge
for the Southern District of Ohio, sitting by designation.

---

**COUNSEL**

J. David Breemer, Pacific Legal Foundation, Sacramento, California, for the plaintiffs-appellants.

Lisa A. Rothstein, Deputy County Counsel, Santa Barbara, California, for the defendants-appellees.

---

**OPINION**

BEEZER, Circuit Judge:

Adam Bros. Farming, Inc. and Iceberg Holdings, L.L.C. (collectively "Adam Bros.") appeal from the district court's dismissal of their joint complaint. Adam Bros. sued the County of Santa Barbara and several of its employees (collectively "the county") in federal court, alleging that the county had, through a false wetland delineation, temporarily taken its land without providing just compensation in violation of the Fifth Amendment. The district court granted the county's motion to dismiss and concluded that Adam Bros.'s claim was not ripe because Adam Bros. failed to demonstrate that it had sought and was denied just compensation under state law. Because we conclude that Adam Bros.'s claim is barred by the application of res judicata, we affirm the district court's judgment.

# I

This case concerns a 268.5 acre parcel of land located in Santa Maria, California, commonly known as Rancho Meadows. On July 22, 1997, the Santa Barbara County Board of Supervisors adopted a community plan delineating a 95-acre tract of Rancho Meadows as wetland. The community plan complied with the applicable notice requirements.

Unaware of the wetland restriction, Bernadette and Richard Adam Sr. purchased Rancho Meadows for $2.3 million on November 26, 1997, after conducting a title search. The Adams immediately transferred Rancho Meadows to Iceberg Holdings, L.L.C., which then leased it to Adam Bros. Farming, Inc.[1] Adam Bros. soon discovered the wetland restriction. Its investigations, however, revealed that the wetland designation was both factually incorrect and improperly made.

When the county developed its community plan, it delineated 95 acres of Rancho Meadows as wetland, even though prior environmental reports showed that no wetland existed on the property. To support its delineation, the county hired a biologist, Katherine Rindlaub, to perform a wetland evaluation according to the Army Corps of Engineers Manual guidelines. The county insisted that Rindlaub perform the evaluation even though Rindlaub informed the county that she was unqualified to do so and that she had no experience with the Army Corps of Engineers Manual. Without performing hydrology or soil testing and without physically examining 80% of Rancho Meadows, Rindlaub issued a report indicating that the 95-acre tract at issue was a wetland. Although Rindlaub informed the county that her report was deficient, the county relied on it to adopt its community plan.

---

[1]The Adams created Iceberg Holdings, L.L.C. to hold title to its land and created Adam Bros. Farming, Inc. to conduct its farming activities. These parties are referred to throughout as "Adam Bros." collectively.

Between May and August 1998, Adam Bros. exchanged a series of letters with the county regarding its ability to farm Rancho Meadows. The county responded that Adam Bros. could farm the land only with a grading permit. Adam Bros. had already concluded that no wetland existed on Rancho Meadows, however, so it did not apply for a grading permit. Instead, Adam Bros. challenged the county's permit requirement in an attempted appeal, which the county refused to process.

In December 1998, the county reinterpreted its grading ordinance, allowing agricultural grading without a permit. Adam Bros. began grading Rancho Meadows. In February 1999, the county again reinterpreted its grading ordinance and returned to its original position of requiring a permit for agricultural grading. Adam Bros. continued to grade Rancho Meadows, however, and on March 30, 1999, the county issued a stop work order.

On March 29, 2000, Adam Bros. sued the county in the Superior Court of California seeking damages and declaratory and injunctive relief for inverse condemnation and violations of the federal Equal Protection, Due Process and Takings Clauses. The complaint alleged that the county and its employees improperly delineated part of Rancho Meadows as wetland and supported that delineation with false reports. The Superior Court dismissed the complaint based on its conclusion that the inverse condemnation and takings claims were not ripe because Adam Bros. had not adequately pursued administrative remedies. Adam Bros. then filed an amended complaint without the takings and inverse condemnation claims.[2] The court dismissed that complaint with prejudice, and Adam Bros. appealed.

---

[2]In state court, the county argued that Adam Bros.'s Fifth Amendment takings claim was not ripe because it had not yet brought an inverse condemnation cause of action. The county further argued that Adam Bros.'s inverse condemnation claim was not ripe because it had not yet requested a writ of mandate. At oral argument, Adam Bros. explained that it strategically chose to proceed on its due process and equal protection claims rather than expending additional resources to comply with or argue against the county's above claims.

The California Court of Appeal reversed the Superior Court's dismissal and held that Adam Bros.'s substantive due process and equal protection claims were ripe because there had been a "final administrative decision concerning the challenged government action." *Adam Bros. Farming, Inc. v. County of Santa Barbara* (*Adam Bros. I*), No. B152770, 2002 WL 31053937, at *3 (Cal. Ct. App. Sept. 16, 2002) (holding that "the dispute between Adam [Bros.] and the County is not hypothetical and permits specific relief by the court"). The court also held that Adam Bros.'s equal protection claim was not barred by the applicable statute of limitation. *Id.* at *4 (holding that "the claim stated by Adam [Bros.] . . . is based on an allegedly fraudulent scheme and conspiracy which was not discovered until shortly before the complaint was filed"). As to Adam Bros.'s remaining claim of procedural due process, the court held that it was not ripe for adjudication and that the statute of limitation had run. *Id.* at *5.

On November 22, 2004, following a 13-day trial, the jury rendered several special verdicts in favor of Adam Bros., including that (1) the county's wetland delineation was improper under the Army Corps of Engineers Manual, (2) the county violated Adam Bros.'s due process and equal protection rights and (3) Adam Bros. was entitled to compensatory damages totaling $5.4 million and punitive damages totaling $130,000. The Superior Court followed this verdict with a bench trial in which it issued injunctive and declaratory relief invalidating the county's wetland delineation. The county appealed.

On appeal, the California Court of Appeal affirmed the injunctive and declaratory relief, but reversed the jury's award of damages. *Adam Bros. Farming, Inc. v. County of Santa Barbara* (*Adam Bros. II*), No. B180880, 2008 WL 565025, at * 11 (Cal. Ct. App. March 4, 2008). The court reversed the damages award based on its conclusion that Adam Bros. lacked standing to bring due process and equal protection claims because it did not own Rancho Meadows at the time

the land use plan was enacted. *Id.* at \*4-6. The court further concluded that, even if Adam Bros. did have standing, the one-year statute of limitation had run. *Id.* at \*7-8. The Supreme Court of California denied Adam Bros.'s petition for review.

Adam Bros. then filed this action in federal district court, alleging a violation of the Fifth Amendment's Takings Clause. The county moved the court to dismiss Adam Bros.'s complaint under Federal Rule of Civil Procedure 12(b)(6). The district court granted that motion based on its conclusion that Adam Bros. had not satisfied the ripeness requirements of *Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), because it had not brought an inverse condemnation action in California state court. Adam Bros. appeals.

## II

The court reviews de novo a district court's dismissal based on lack of ripeness. *Colwell v. Dept. of Health & Human Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009). We may affirm on any ground for which support exists in the record. *Tyler v. Cuomo*, 236 F.3d 1124, 1131 (9th Cir. 2000).

## III

### A

[1] For a Fifth Amendment takings claim to be ripe for review, the party bringing the challenge must overcome two "prudential hurdles" first presented by the Supreme Court in *Williamson County*. *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 733-34 (1997). In *Williamson County*, the Court held that a party asserting a takings claim must demonstrate (1) that "the government entity charged with implementing the regulations has reached a final decision regarding the application of the [challenged] regulations to the property

at issue," 473 U.S. at 186, and (2) that she sought "compensation through the procedures the State has provided." *Id.* at 194.

First, a final decision exists when (1) a decision has been made "about how a plaintiff's own land may be used" and (2) the local land-use board has exercised its judgment regarding a particular use of a specific parcel of land, eliminating the possibility that it may "soften[ ] the strictures of the general regulations [it] administer[s]." *Suitum*, 520 U.S. at 738-39. Courts require a final decision because "only a regulation that 'goes too far' results in a taking under the Fifth Amendment," *id.* at 734 (quoting *Pa. Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922)), and a "court cannot determine whether a regulation has gone 'too far' unless it knows how far the regulation goes." *Id.* (quoting *MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340, 348 (1986)).

**[2]** Here, the county made a decision regarding Adam Bros.'s agricultural grading of Rancho Meadows and enforced that decision by issuing a stop work order, applying its judgment to Adam Bros.'s specific activities on Rancho Meadows and establishing the boundaries of the grading ordinance. Before the county issued its stop work order, Adam Bros. communicated extensively with the county to determine its rights. During this time, the county demonstrated that the boundaries of its grading ordinance were not concrete by twice reinterpreting the regulation. By the time Adam Bros. began to grade Rancho Meadows, though, the county reached a conclusion as to the meaning of its grading ordinance and issued a stop work order, creating a final, concrete harm.[3] Furthermore, the California Court of Appeal decision in *Adam*

---

[3]Insofar as estoppel could be an issue, our conclusion is consistent with that of the California Court of Appeal. *See Adam Bros. I*, 2002 WL 31053937, at *3 (applying *Williamson County* and holding that "the dispute between Adam and the County is not hypothetical and permits specific relief by the court").

*Bros. II* represents a "final state judgment denying just compensation," as there remains no possibility that the county will provide Adam Bros. with compensation absent a decision of this court. *San Remo Hotel, L.P. v. City & County of S.F.*, 545 U.S. 323, 337 (2005).

Second, a plaintiff bringing a takings claim must have "unsuccessfully attempted to obtain just compensation through the procedures provided by the State." *Williamson County*, 473 U.S. at 195. To meet this standard, a plaintiff must bring her claim in state court, requesting just compensation for the alleged taking. *See id.* at 196. This requirement exists because the "Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation." *Id.* at 194. It is not until a party seeks and is denied just compensation from the state that a constitutional violation occurs. *See id.* at 195.

**[3]** When the state provides a procedure by which a party may seek just compensation, such as an inverse condemnation cause of action, the plaintiff must seek relief in state court before bringing a claim in federal court. *Id.* at 195. Here, Adam Bros. did seek relief in state court before filing its complaint in federal court, but Adam Bros. did not rely on California's inverse condemnation cause of action. Instead, it relied on the federal Due Process and Equal Protection Clauses. The issue, then, is whether seeking relief through these means in state court is a valid request of just compensation for the purposes of ripening a federal takings claim.

Under one reading of *Williamson County*, if Adam Bros. had successfully obtained damages on its due process and equal protection claims, its alleged injuries would have been redressed and its takings claim would have been mooted. Because an award of damages on these claims would have redressed Adam Bros.'s alleged injuries, it could be fairly said that Adam Bros. has requested and been denied just compensation from the state. Still, under another reading, California

provides its own cause of action for addressing an alleged taking, and the state is free to require additional procedure, such as administrative exhaustion, with which a party must comply to proceed with that claim. If asserting a federal cause of action in state court would ripen a federal takings claim, a party would effectively be able to bypass any additional state procedures by relying on federal law. The party would then be awarded with a second bite at the apple in federal court if unsuccessful in state court. Still, we ultimately do not need to adopt either reading of *Williamson County* and so we decline to do so.

**[4]** As this case raises only prudential concerns,[4] we have the discretion to waive the requirements of *Williamson* County, assume that ripeness is met and continue with our analysis. *McClung v. City of Sumner*, 548 F.3d 1219, 1224 (9th Cir. 2008). Accordingly, we decline to definitively resolve whether this claim is ripe according to the requirements of *Williamson County*. *See id.* We instead assume without deciding that Adam Bros.'s takings claim is ripe. Adam Bros. now faces the difficult task of avoiding the application of res judicata under the precedent set forth by the Supreme Court in *San Remo*.

## B

**[5]** Judicial proceedings of any state "have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State." 28 U.S.C. § 1738. Also, it is well-established that state courts are fully competent to hear federal claims, including constitu-

---

[4]Regarding Article III, or jurisdictional, ripeness, Adam Bros.'s alleged injury is not "too 'imaginary' or 'speculative' to support jurisdiction." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000). Nor would adjudication of the issue before us be premature at this point in time. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1122 (9th Cir. 2009). The issues before us are clear and not dependent upon contingent events.

tional challenges to land-use regulations. *See San Remo Hotel, L.P. v. City & County of S.F.*, 545 U.S. 323, 347 (2005). Res judicata therefore precludes a party that has proceeded on federal claims in state court from relitigating those claims in federal court. *San Remo*, 545 U.S. at 346-48; *Palomar Mobilehome Park Ass'n v. City of San Marcos*, 989 F.2d 362, 365 (9th Cir. 1993). When applying res judicata to a state court decision, we "give the same preclusive effect to [that] judgment as another court of that State would give," meaning that we apply res judicata as adopted by that state. *Parsons Steel, Inc. v. First Ala. Bank*, 474 U.S. 518, 523 (1986).

[6] Under California law, res judicata precludes a party from relitigating (1) the same claim, (2) against the same party, (3) when that claim proceeded to a final judgment on the merits in a prior action. *See Mycogen Corp. v. Monsanto Co.*, 51 P.3d 297, 301 (Cal. 2002). Elements (2) and (3) are obviously met in this case—Adam Bros. sued the county in state court, and that case proceeded to a final judgment on the merits, a jury verdict.

[7] Two different causes of action are the same claim if they rise from the same invasion of a "primary right." *Id.* at 306. A plaintiff's primary right is "the right to be free from a particular injury, regardless of the legal theory on which liability for the injury is based." *Fed'n of Hillside & Canyon Ass'ns v. City of L.A.*, 24 Cal. Rptr. 3d 543, 557 (Cal. Ct. App. 2004). The focus of our analysis is on "the harm suffered." *Brodheim v. Cry*, 584 F.3d 1262, 1268 (9th Cir. 2009) (quoting *Agarwal v. Johnson*, 603 P.2d 58, 72 (Cal. 1979)). As explained by the Supreme Court of California:

> The primary right theory is a theory of code pleading . . . that provides that a "cause of action" is comprised of a "primary right" of the plaintiff, a corresponding "primary duty" of the defendant, and a wrongful act by the defendant constituting a breach of that duty. The most salient characteristic of a pri-

mary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action.

*Crowley v. Katleman*, 881 P.2d 1083, 1090 (Cal. 1994). We therefore focus our inquiry on the facts pleaded and injuries alleged by Adam Bros. in its state and federal complaints, without regard to its asserted theories of recovery.

**[8]** The substance of Adam Bros.'s state and federal complaints is nearly identical. Both complaints allege that the county and its employees improperly delineated 95-acres of Rancho Meadows as a restricted wetland, and both complaints assert that Adam Bros. was injured by this delineation because it could not farm Rancho Meadows as it had intended. The damages that Adam Bros. now seeks to obtain in federal court are identical to those it sought in state court. For purposes of res judicata, it is irrelevant that Adam Bros. attempts to recover under different legal theories. *See Mycogen*, 51 P.3d at 307 (holding that "[e]ven where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief").

**[9]** Adam Bros. argues that its present temporary takings claim cannot be the same claim for purposes of res judicata because this claim could not have been brought and did not exist until after the California court invalidated the county's false wetland designation. Yet its present claim is still based on the same underlying factual circumstances as the claims it raised in state court. The particularities of Adam Bros.'s causes of action are irrelevant. Neither does the fact that the Superior Court dismissed Adam Bros.'s takings claim without prejudice immunize those claims from preclusion.[5] Adam Bros.'s claim is barred by res judicata.

---

[5]After the dismissal without prejudice, Adam Bros. chose to file an amended complaint that omitted the takings and inverse condemnation claims. Res judicata bars "not only claims actually litigated in a prior pro-

**[10]** The Supreme Court's decision in *San Remo* supports our conclusion. In *San Remo*, hotel owners brought suit against the city of San Francisco, challenging the constitutionality of a hotel ordinance under the Takings Clause of the Fifth Amendment. *See San Remo*, 545 U.S. at 326. The district court granted the city's motion for summary judgment, concluding that the hotel owners' claims were not ripe under *Williamson County*. *See id.* at 330. The Ninth Circuit affirmed with regard to the hotel owners' as-applied takings claim and abstained under *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941), with regard to the hotel owners' facial takings claim. *See id.* The hotel owners reserved their federal causes of action. *See id.* at 332. The parties returned to the state trial court, which dismissed the hotel owners' complaint. *See id.* After an intermediate appeal, the California Supreme Court held in favor of the city, analyzing the hotel owners' takings claim under both state and federal law, even though they sought relief solely under state law. *See id.* at 332-33.

**[11]** The hotel owners then returned to federal district court to assert their reserved federal claims. *See id.* at 334. The district court, however, concluded that 28 U.S.C. § 1738 applied and held that the hotel owners' claims were barred by res judicata. *See id.* at 334-35. After an intermediate appeal to the Ninth Circuit, the Supreme Court held that there is no exception to § 1738 for federal takings claims. *See id.* at 347-48. The Court announced this holding in light of the fact that res judicata will prevent many takings plaintiffs from asserting their causes of action in federal court. *See id.* at 342. As the Court stated, "we are not free to disregard the full faith and credit statute solely to preserve the availability of a fed-

---

ceeding, but also claims that could have been litigated." *Palomar Mobilehome Park Ass'n v. City of San Marcos*, 989 F.2d 362, 364 (9th Cir. 1993) (emphasis added) (citing *Busick v. Workmen's Compensation Appeals Bd.*, 7 Cal. 3d 967, 975 (1972)). By choosing to proceed in state court without the takings claim, Adam Bros. risked that the state court's later judgment would forever bar that takings claim.

eral forum." *Id.* at 347. Furthermore, we remain unwilling "to transform the district court into an appellate tribunal for state proceedings." *Palomar*, 989 F.2d at 366.

**AFFIRMED.**