Filed 10/7/14  U-Haul Co. of California v. City of Berkeley CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| U-HAUL COMPANY OF CALIFORNIA et al., <br><br>     Cross-Complainants and Appellants, <br><br> v. <br><br> CITY OF BERKELEY, <br><br>     Cross-Defendant and Respondent. | A136973 <br><br> (Alameda County <br>   Super. Ct. No. RG08388586) |
| CITY OF BERKELEY, <br><br>     Plaintiff and Appellant, <br><br> v. <br><br> U-HAUL COMPANY OF CALIFORNIA et al., <br><br>     Defendant and Respondent. | A137541 <br><br> (Alameda County <br>   Super. Ct. No. RG08388586) |

This is a consolidated appeal in a longstanding legal feud between U-Haul Company of California and Amerco Real Estate Company (collectively, U-Haul) and City of Berkeley (the City).  This feud arises from the City's decision in 2007 to revoke U-Haul's use permit to operate a truck and trailer rental facility at 2100 San Pablo Avenue.  In 2008, the City filed the underlying lawsuit asserting zoning ordinance violation and negligence per se claims based upon U-Haul's alleged continued operation of its rental facility at 2100 San Pablo Avenue.  After the City was awarded a preliminary injunction against U-Haul requiring the company to refrain from all truck and trailer

1

rental activity at that location (a decision this court affirmed in 2009), U-Haul filed a cross-complaint asserting numerous causes of action based upon its theory that the City's denial of its right to conduct this business violated its rights under the due process, takings and equal protection clauses of the United States and California Constitutions, and violated the California Environmental Quality Act.

In this appeal, U-Haul now challenges several rulings by the trial court that ultimately led to entry of judgment in favor of the City and a permanent injunction prohibiting their truck and trailer rental activity at 2100 San Pablo Avenue. Specifically, U-Haul challenges the trial court's rulings to sustain the City's demurrer to its cross-complaint, to grant the City's motion for judgment on the pleadings as to three of its constitutionally-grounded affirmative defenses, and to grant the City's motion for summary judgment. In doing so, U-Haul disputes the trial court's findings that res judicata bars relitigation of its constitutionally-grounded claims and affirmative defenses, and that no triable issues exist with regard to the City's entitlement to a permanent injunction prohibiting U-Haul from engaging in the identified rental activities. U-Haul also challenges the order for injunctive relief entered by the trial court as overbroad and ambiguous.

The City, in turn, challenges the trial court's decision to award it only 70 percent of the attorney fees requested based upon the court's finding that the City obtained only partial success in this litigation.

For reasons set forth below, we affirm the judgment in all regards except for the attorney fee award, which, consistent with the City's contention that it achieved full success on the merits, we conclude must be reconsidered by the trial court.

**FACTUAL AND PROCEDURAL BACKGROUND**

We briefly set forth the history of this lengthy legal battle between the parties, which, we note, is before this court for the third time. (*U-Haul Co. of California v. City of Berkeley*, A121811, March 27, 2009 (nonpub.) (*U-Haul I*); *City of Berkeley v. U-Haul Co. of California*, A122694, November 10, 2009 (nonpub.) (*U-Haul II*).) In doing so, we

2

refrain from repeating the more detailed history of this litigation set forth in our prior opinions in the name of judicial efficiency.

On June 4, 2008, the City filed an amended verified complaint for injunction/abatement of public nuisance asserting two causes of action. The first cause of action was for a zoning ordinance violation based upon U-Haul's alleged continued operation of a truck and trailer rental operation at 2100 San Pablo Avenue in violation of the governing zoning laws at that location. The second cause of action was for public nuisance per se based, again, on U-Haul's alleged zoning ordinance violation. For relief, the City prayed for, among other things, a permanent injunction barring U-Haul from operating a truck and trailer rental business, "as well as any other business or use not permitted as of right by [Berkeley Municipal Code] Chapter 23E.64, as determined by the Zoning Officer," at 2100 San Pablo Avenue.

On August 14, 2008, the trial court granted the City's request for a preliminary injunction. Upon entry of this injunction, U-Haul was enjoined from "all truck and/or trailer rental activity at 2100 San Pablo Avenue" and "from bringing any trucks or trailers to, or accepting them at, 2100 San Pablo Avenue in Berkeley."

On August 21, 2008, U-Haul filed an answer to the verified amended complaint and, on September 23, 2008, filed its cross-complaint. Both U-Haul's answer and cross-complaint relied upon theories of due process, takings, and equal protection to challenge the City's actions to preclude it from operating its truck/trailer rental business at 2100 San Pablo Avenue.

In 2009, this court issued two decisions in this matter. In *U-Haul I*, filed in March 2009, we upheld the trial court's denial of U-Haul's writ petition challenging the City's revocation of its use permit on due process and other grounds.[1] (*U-Haul I, supra*, 2009 Cal.App.Unpub. LEXIS 2441, at *16-17, *29-30.) Then, in *U-Haul II*, filed in November 2009, we relied on *U-Haul I* to dismiss as moot U-Haul's challenge to entry of the

---

[1]     These prior decisions are discussed in greater detail below during our consideration of the merits of this appeal.

3

aforementioned preliminary injunction barring it from engaging in "all truck and/or trailer rental activity at 2100 San Pablo Avenue in Berkeley" or "bringing any trucks or trailers to, or accepting them at, 2100 San Pablo Avenue in Berkeley." (*U-Haul II, supra*, 2009 Cal.App.Unpub. LEXIS 8946, at *2, *9-*10.)

In addition, in late 2009, the City moved for judgment on the pleadings with respect to U-Haul's affirmative defenses. The City had earlier demurred to the cross-complaint, but consideration of this demurrer had been postponed pending this court's resolution of the earlier appeals. These motions were subsequently heard together by the trial court on March 10, 2010. Relevant here, the trial court granted the City's motion for judgment on the pleadings as to the first, second and fifth affirmative defenses after concluding "the Court of Appeal decided that [U-Haul's] constitutional and other challenges to the City's revocation of their conditional use permit were barred by a final decision in the underlying writ case." The court then sustained the City's demurrer to the cross-complaint for essentially the same reason. U-Haul's subsequent motion for reconsideration was also denied.

On August 18, 2011, the City moved for summary judgment, seeking an order for a permanent injunction on the ground that no triable issue of fact remained with respect to U-Haul's violation of the zoning ordinance and consequent nuisance per se offense. Following a hearing, the trial court accepted the City's arguments and granted the motion. It thereafter denied U-Haul's motion for reconsideration.

Judgment was thus entered in favor of the City and a permanent injunction issued barring U-Haul from using its 2100 San Pablo Avenue facility to rent trucks or trailers stored on the premises. In addition, the trial court granted in part the City's subsequent motion for attorney fees and costs, awarding a total of $91,910 in fees and $8,450.74 in costs. This appeal and cross-appeal followed.

## DISCUSSION

U-Haul challenges the following decisions by the trial court. First, U-Haul contends the trial court erred in dismissing on res judicata grounds three of its constitutionally-based affirmative defenses, as well as its cross-complaint asserting

4

independent causes of action for the same purported due process and equal protection violations.[2] Second, U-Haul contends the trial court erred in granting the City's motion for summary judgment and, more specifically, in finding no triable issue of fact with respect to whether it was operating an "automobile rental business" at the San Pablo Avenue site within the meaning of the Berkeley Municipal Code (hereinafter, BMC). Third, U-Haul contends the permanent injunction issued by the trial court precluding it from engaging in "rental activity" at the San Pablo Avenue site is impermissibly ambiguous and overbroad.

On cross-appeal, the City, in turn, challenges the attorney fee award on the ground that the trial court erred in reducing the amount of fees to which it was otherwise entitled by 30 percent based upon the mistaken finding that the City did not prevail on all of its claims.

## I. Does Res Judicata or Law of the Case Bar U-Haul's Claims and Affirmative Defenses?

The trial court relied on the doctrines of res judicata and law of the case to preclude U-Haul from asserting its causes of action and affirmative defenses based on theories of due process, equal protection and related civil rights violations. Specifically, the trial court found "the Court of Appeal [in *U-Haul II*] decided that [U-Haul's] constitutional and other challenges to the City's revocation of their conditional use permit were barred by a final decision in the underlying writ case." Thus, deciding that U-Haul, by way of this action, was essentially continuing its challenge to the City's revocation of its use permit, albeit by other theories, the trial court concluded that res judicata and law of the case required dismissal. We agree.

In ruling on a demurrer or motion for judgment on the pleadings, the trial court examines the pleading to determine whether it alleges facts sufficient to state a cause of action under any legal theory, with the facts being assumed true for purposes of this

---

[2] Specifically, the trial court sustained the City's demurrer to U-Haul's cross-complaint and granted the City's motion for judgment on the pleadings with respect to its first, second, and fifth affirmative defenses.

inquiry.  (*Committee for Green Foothills v. Santa Clara County Bd. Of Supervisors* (2010) 48 Cal.4th 32, 42; *Pang v. Beverly Hosp., Inc*. (2000) 79 Cal.App.4th 986, 989.) If "all of the facts necessary to show that an action is barred by res judicata are within the complaint or subject to judicial notice, a trial court may properly sustain a general demurrer. [Citation.]  In ruling on a demurrer based on res judicata, a court may take judicial notice of the official acts or records of any court in this state. ([Citations]; Evid. Code, § 452.)"  (*Frommhagen v. Bd. of Supervisors* (1987) 197 Cal.App.3d 1292, 1299.) Review on appeal of the trial court's ruling on these motions is de novo.  (*Committee for Green Foothills v. Santa Clara County Bd. Of Supervisors, supra*, 48 Cal.4th at p. 42.)

Turning to the applicable substantive law, the dimensions of the related doctrines of res judicata and law of the case are well-established.  " 'The doctrine of the law of the case is this:  That where, upon an appeal, the [reviewing] court, in deciding the appeal, states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout its subsequent progress, both in the lower court and upon subsequent appeal, and, as here assumed, in any subsequent suit for the same cause of action . . . ' [Citation.]"  (*People v. Stanley* (1995) 10 Cal.4th 764, 786.)  The doctrine of res judicata, in turn, holds:  "[A]ll claims based on the same cause of action must be decided in a single suit; if not brought initially, they may not be raised at a later date.  ' "Res judicata precludes piecemeal litigation by splitting a single cause of action or relitigation of the same cause of action on a different legal theory or for different relief." ' [Citation.] A predictable doctrine of res judicata benefits both the parties and the courts because it 'seeks to curtail multiple litigation causing vexation and expense to the *parties* and wasted effort and expense in *judicial administration*.' (7 Witkin, Cal. Procedure (4th ed. 1997) Judgment, § 280, p. 820.)" (*Mycogen Corp. v. Monsanto Co*. (2002) 28 Cal.4th 888, 897.)

In analyzing a claim under these doctrines, "California has consistently applied the 'primary rights' theory in defining a cause of action. Under this theory, the invasion of one 'primary right' gives rise to a single cause of action, even though several remedies may be available to protect the primary right. (*Slater* v. *Blackwood* (1975) 15 Cal.3d 791,

6

795 [126 Cal.Rptr. 225, 543 P.2d 593]; *Busick* v. *Workmen's Comp. Appeals Bd*. (1972) 7 Cal.3d 967, 975 [104 Cal.Rptr. 42, 500 P.2d 1386]; *Sawyer* v. *First City Financial Corp*. (1981) 124 Cal.App.3d 390, 399 [177 Cal.Rptr. 398]; 4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 23, pp. 66-67.) . . . [T]his theory is well developed in such areas as personal injury and injuries to property (4 Witkin, Cal. Procedure, *supra*, §§ 38-49, pp. 80-88) . . . ." (*Frommhagen v. Bd. of Supervisors, supra,* 197 Cal.App.3d 1299-1300.) "[F]or purposes of applying the doctrine of res judicata, the phrase 'cause of action' has a more precise meaning: The cause of action is the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory (common law or statutory) advanced. [Citation.] . . . '[T]he "cause of action" is based upon the harm suffered, as opposed to the particular theory asserted by the litigant. [Citation.] Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief. 'Hence a judgment for the defendant is a bar to a subsequent action by the plaintiff based on the same injury to the same right, even though he presents a different *legal ground* for relief.' [Citations.]' Thus, under the primary rights theory, the determinative factor is the harm suffered. When two actions involving the same parties seek compensation for the same harm, they generally involve the same primary right." (*Boeken v. Philip Morris USA, Inc*. (2010) 48 Cal.4th 788, 798.)

Thus, returning to the case at hand, we must determine whether the parties' current and previous lawsuits arise out of the "same injury to the same right" (*Boeken v. Philip Morris USA, supra,* 48 Cal.4th at p. 798), and, if so, whether this court's prior determination of one or more issues in *U-Haul I* or *U-Haul II* has conclusive effect in this matter, regardless of the precise legal theory relied upon or relief sought by U-Haul. This inquiry of course requires closer examination of our prior decisions.

In *U-Haul I*, this court upheld the denial of U-Haul's writ petition challenging the City's revocation of its decades-old use permit on both due process and sufficiency-of-

7

the-evidence grounds.[3] (*U-Haul I, supra*, 2009 Cal.App.Unpub. LEXIS 2441, at *16-17, *29-30.) Following this decision, we issued *U-Haul II*, in which we dismissed as moot U-Haul's challenge to the trial court's grant of the City's related request for a preliminary injunction barring U-Haul from engaging in "all truck and/or trailer rental activity at 2100 San Pablo Avenue in Berkeley" or "bringing any trucks or trailers to, or accepting them at, 2100 San Pablo Avenue in Berkeley." In doing so, we relied upon our previous decision in *U-Haul I*, which had become final following denial of U-Haul's petitions for review to higher courts. Specifically, we held:

"[A]pplying the principles of res judicata, there is no issue left for us to decide that could afford appellants any relief. Put simply, appellants seek the lifting of an injunction that bars them from conducting their truck and trailer rental business on the property. Appellants' request is based on their claim that the City had no basis for revoking the use permit that authorized them to conduct this business. Indeed, in their opening brief, appellants describe this action as one 'relat[ing] to the City's extraordinary revocation of U-Haul's 1975 Use Permit in a Limited Commercial District based on several technical citations . . . .' . . . In our March 2009 decision, we upheld the City's decision to revoke appellants' use permit. While appellants raise some new constitutional arguments in this action in opposing the City's request for a preliminary injunction -- including arguments that revoking their use permit violated their rights to equal protection and due process -- the principle of res judicata bars relitigation of not only issues that were raised in the prior action, but also issues that could have been raised. [Citation; fn. omitted.] [¶] Under these circumstances, we conclude the rights of the parties with respect to this controversy over revocation of appellants' use permit to conduct business on the property have been finally determined, and neither affirmance nor reversal of the trial court's injunctive order

---

[3]     Specifically, we held that U-Haul was afforded due process during the revocation process and that sufficient evidence supported the existence of recurring permit violations and persistent complaints by neighbors justifying the City's action. (*U-Haul I, supra*, 2009 Cal.App.Unpub. LEXIS 2441, at *16-17, *29-30.) U-Haul's two subsequent petitions for review of our decision to the California and United States Supreme Courts were denied, rendering our judgment final.

8

can undue that determination at this point." (*U-Haul II, supra*, 2009 Cal.App.Unpub. LEXIS 8946, at *7-*9.)

We now have before us U-Haul's cross-complaint, filed September 23, 2008, setting forth causes of action against the City for (1) violations of the due process clause based upon the City's alleged unconstitutional deprivation of U-Haul's property through "governmental regulation" and arbitrary and irrational actions against the company, (2) violations of the equal protection clause based upon the City's alleged disparate and discriminatory treatment of U-Haul vis-a-vis "analogous" vehicle-share companies such as CarShare and ZipCar, and (3) civil rights violations (42 U.S.C. § 1983) based upon the City's alleged "illegal and unconstitutional conduct". In addition, U-Haul raised three affirmative defenses to the City's complaint in its answer filed August 21, 2008, likewise grounded in due process, equal protection and federal civil rights law and based upon the same alleged misconduct – mainly, unjustifiably and irrationally treating U-Haul differently from CarShare, ZipCar and other allegedly similarly-situated businesses, and abusing police power by "unfair and improper selective enforcement of its laws, codes and statutes."[4]

The trial court found that U-Haul's causes of action and affirmative defenses were nothing more than newly-crafted challenges to the same alleged harm (to wit, the City's revocation of U-Haul's use permit). U-Haul, however, insists they are actually based upon the City's misconduct *after* its 2007 challenge to revocation of its use permit, rendering the res judicata and law of the case doctrines inapplicable. (See *McGaffey v. Sudowitz* (1961) 189 Cal.App.2d 215, 217-218 [res judicata does not apply where "there are changed conditions and new facts which were not in existence at the time the action was filed upon which the prior judgment is based"].) We conclude the trial court's finding is more accurate.

Indeed, there is no real dispute here that "the harm suffered" by U-Haul is the loss of its right to conduct a truck and trailer rental business (or as U-Haul describes it, a

---

[4]      U-Haul acknowledges that the factual predicate for these causes of action and affirmative defenses is the same.

9

"truck sharing" business) at the San Pablo Avenue site. Also beyond dispute is the fact that this loss arose when the City revoked U-Haul's use permit, the very action U-Haul has twice unsuccessfully challenged in this court. It is U-Haul's attempt to avoid the impact of having its use permit revoked that has brought the parties back, yet again, to this court. U-Haul forcefully argues otherwise, but we need look no further than the language of U-Haul's cross-complaint to find the flaw in its arguments. To wit, the prayer for relief in the cross-complaint is a court order "enjoining [the City] from unlawfully prohibiting or preventing U-Haul from conducting business in the City of Berkeley" – essentially the same relief U-Haul sought in the prior proceedings. As our opinion in *U-Haul II* states: "[U-Haul et al.] seek the lifting of an injunction that bars them from conducting their truck and trailer rental business on the property . . . based on their claim that *the City had no basis for revoking the use permit that authorized them to conduct this business*." (Italics added.) While we could perhaps, in this case, change the italicized portion of our previous language to read, "the City has no basis for continuing to refuse to authorize them to conduct this business," the fact remains U-Haul's purported injury and requested relief are in all significant regards identical.

Thus, the trial court got it right. Res judicata and law of the case apply squarely to this case, barring U-Haul's attempts to, yet again, relitigate legal and factual issues we have already decided. As our appellate colleagues have aptly stated: "If the legal principle were otherwise, litigation would end finally only when a party could no longer find counsel whose knowledge and imagination could conceive of different theories of relief based upon the same factual background. [Citation.]' [Citation.]" (*Frommhagen v. Bd. of Supervisors, supra,* 197 Cal.App.3d at p. 1301.)

Finally, we turn briefly to U-Haul's argument that it changed from a "truck rental" business model to a "truck sharing" model after the 2007 permit revocation, with the result that certain of its claims and affirmative defenses relating to this "new model" could not have been previously litigated. We leave for later in this opinion our discussion of the nature of U-Haul's business operations at 2100 San Pablo Avenue and whether it is best described as "truck sharing" or "truck renting." For now, however, we simply point

10

out that U-Haul's cross-complaint fails to set forth relevant and specific facts to actually support its claims that the City engaged in misconduct in violation of its constitutional or civil rights *after* the company's 2007 permit revocation challenge. To name a few examples, while U-Haul alleges to have been a victim of disparate treatment vis-à-vis car-sharing businesses like CarShare, U-Haul does not allege this treatment occurred only after its permit was revoked, such that it could not have raised the issue previously. The same is true with respect to U-Haul's allegations that the Berkeley police "issued citations to U-Haul without legal or factual basis" and otherwise engaged in "unfair and improper selective enforcement of its laws, codes and statutes."

The law is quite clear the burden is on U-Haul to demonstrate its cross-complaint could be successfully amended to avoid dismissal. (*Pang v. Beverley Hosp., Inc., supra*, 79 Cal.App.4th at p. 989 ["plaintiff bears the burden of proof on th[e] issue [of whether the pleading defect can reasonably be cured by amendment]"].) U-Haul has simply not met this burden. In the continued absence of necessary information identifying where, when, by whom, or to whom the alleged post-2007 misconduct occurred, the trial court's ruling sustaining the demurrer to U-Haul's cross-complaint without leave to amend stands.[5]

## II. Is there a triable issue of fact regarding whether U-Haul's operations constitute "truck rental" within the meaning of the City Municipal Code?

U-Haul next challenges the trial court's grant of the City's motion for summary judgment. Applicable legal standards are well-established. The trial court may grant summary judgment if there is no question of fact and the issues raised by the pleadings

---

[5] As the City points out (and U-Haul disregards), U-Haul submitted a proposed amended complaint in moving for reconsideration of the trial court's ruling sustaining the demurrer to its cross-complaint, which the court rejected as insufficient to cure the cross-complaint's inadequacies. Adding further support for our decision to affirm the trial court's ruling on demurrer, U-Haul's proposed amended cross-complaint continued to ask for the same relief – to wit, among other things, a judicial declaration that "U-Haul has the right to operate its business within the City of Berkeley," and court orders "enjoining Cross-Defendants from unlawfully prohibiting or preventing U-Haul from conducting business in the City of Berkeley."

may be decided as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Murillo v. Rite Stuff Food, Inc*. (1998) 65 Cal.App.4th 833, 840.)[6] Thus, a plaintiff moving for summary judgment must establish there are no triable issues of fact, that each element of its causes of action have been proven, and that there are no defenses available to the defendant. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767.) In considering whether the plaintiff has met these requirements, the court must consider all of the evidence set forth in the papers in the light most favorable to the defendant as the nonmoving party, resolving any evidentiary doubts or ambiguities in the defendant's favor. (*Id*. at p. 768; see also § 437c, subd. (c).)

On appeal, we independently review an order granting summary judgment. (*Saelzler v. Advanced Group 400, supra,* 25 Cal.4th at p. 767.) In doing so, we must, like the trial court, consider all evidence set forth in the papers in the light most favorable to U-Haul, as the nonmoving party, and also resolve any evidentiary doubts or ambiguities in U-Haul's favor. (*Id*. at p. 768; see also § 437c, subd. (c).)

Here, the City moved for summary judgment or, in the alternative, summary adjudication of its zoning ordinance violation and nuisance per se claims. The City reasoned that no trial was necessary because undisputed facts already established that: (1) a zoning ordinance prohibits truck and trailer rentals at 2100 San Pablo Avenue, (2) before and after entry of the preliminary injunction in this case, U-Haul has operated a truck and trailer rental operation at that site in violation of the zoning ordinance, and (3) U-Haul has no defense to the City's claims. Accordingly, the City argued, it was entitled to summary judgment to make permanent the injunction barring U-Haul from operating its truck and trailer rental business at 2100 San Pablo Avenue.

In opposing summary judgment, U-Haul argued that a triable issue of fact exists with respect to whether it was still operating a "truck rental" business at 2100 San Pablo Avenue. Insisting the company no longer rents trucks or trailers at this site, U-Haul offered evidence in the form of a declaration from its Vice-President, Eric Crocker, that

---

[6]     Unless otherwise stated, all statutory citations herein are to the Code of Civil Procedure.

12

its "San Pablo facility has acted as a retail operation selling moving supplies . . . and served as a pick-up and drop-off point for truck sharing customers." According to U-Haul, Crocker's declaration demonstrated the company changed its business model as of mid-May 2008 from "truck renting" to "truck sharing," comparable to ZipCar and City CarShare, which are not required by the City to obtain use permits to operate. For example, this declaration stated that, since mid-2008, customers at the San Pablo Avenue facility no longer enter into rental contracts, make reservations or make payments to U-Haul onsite. Rather, customers merely use the facility to pick up or drop off the vehicles, "like the[] other vehicle sharing businesses," while making reservations and payments online or over the telephone.

After a hotly contested hearing, the trial court sided with the City, finding in particular that "U-Haul's Activities at the Facility in late 2008 fit within the definition of 'Automobile Rentals' in [the BMC] because U-Haul provided trucks to consumers for short time periods in exchange for money and U-Haul stored the trucks at the facility. In addition, a business that over a 5 week period provides over 750 consumers with short term use of trucks is a truck rental business in the common sense of the phrase. (*People ex rel. Lockyer v. Pacific Gaming Technologies* (2000) 82 Cal.App.4th 699, 700-701 ('if it looks like a duck, walks like a duck, and sounds like a duck, it is a duck')." As such, the trial court granted the City's motion for summary judgment.

We conclude the trial court's ruling was correct. In doing so, we first point out that U-Haul's evidence in opposition to summary judgment also included admissions from both Eric Crocker and Jeremy Frank, U-Haul Business Consultant's Area District Vice President, that there was in fact no significant difference "between truck sharing and truck renting in terms of the U-Haul operations at 2100 San Pablo Avenue." Specifically, Crocker attested that any difference was "[p]retty much . . . verbiage," while Frank attested that "the logistics and the activity is exactly the same," adding "my stance would be that [U-Haul] ha[s] been truck sharing for 60 years." In addition, Crocker acknowledged there was a dedicated telephone on the property that customers could use

13

to reserve a truck or trailer if they had not made a reservation by telephone or online before arriving at the San Pablo Avenue facility.

In light of this evidence, there is but one conclusion we can reasonably draw: Even assuming U-Haul made certain mid-2008 modifications to its business model, the service it provides to its customers – whether phrased "truck-sharing" or "truck rental" and whether paid for in person, over the telephone, or online – is in all significant regards the same. As such, U-Haul's service in mid-2008 continued to run afoul of the City's zoning ordinance barring truck and trailer rentals at 2100 San Pablo Avenue.

Moreover, our conclusion in this regard is not altered by U-Haul's insistence that the trial court somehow misapplied the BMC definition of "Automobile Rentals" when granting the City's summary judgment motion. Briefly, the BMC defines an "Automobile Rental" establishment as one that "rents automobiles, trucks . . . or other motor driven vehicles that are stored either indoors or outdoors on its premises." (BMC, Ch. 23F.04.010.) According to U-Haul, its San Pablo Avenue operation does not meet this definition because "it neither contracts for, nor receives payment for, the use of its vehicles at the San Pablo site." While acknowledging its trucks are "stored" on the premises within the meaning of the BMC, U-Haul nonetheless faults the trial court for "erroneously weigh[ing] factors that bear no relevance to the Code definition," such as its volume of business at the site and the fact that its customers use the trucks for short time periods.

Having considered U-Haul's argument in light of the record at hand, we decline U-Haul's attempt to turn a straightforward, common-sense definition of a well-known business activity into a complicated legal inquiry in order to create a disputed fact where none exists. (E.g., *Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [courts must interpret statutes " 'according to the usual, ordinary import of the language employed in framing them' "].) As stated above, regardless of where or how U-Haul's customers reserve or pay for a U-Haul truck or trailer, the fact remains that these customers come to 2100 San Pablo Avenue for the purpose of obtaining a truck or trailer for short-term usage, and they subsequently leave 2100 San Pablo Avenue in possession

of a U-Haul truck or trailer that had been stored on the premises for just that purpose. Thus, to paraphrase the trial court in this case, if it looks, walks and quacks like a duck, it is a duck. U-Haul provides us no basis for rejecting this near-universal truth for purposes of this case. Accordingly, we agree there is no triable issue of fact regarding the City's entitlement to a permanent injunction to abate the nuisance engendered by U-Haul's continued violation of the governing zoning ordinance.

### III. Is the trial court's injunction unconstitutionally vague and overbroad?

U-Haul's final contention in challenging the judgment is that the trial court erred by entering an overbroad and ambiguous permanent injunction.

The governing law is not in dispute. "Generally, 'an injunction must not be uncertain or ambiguous and the defendant must be able to determine from the order what he may and may not do. However, in determining whether the defendant has been given sufficient notice of the conduct proscribed or compelled, the language of the injunction must be interpreted in light of the record which discloses the kind of conduct that is sought to be enjoined.' [Fn. omitted.]" (*City of Redlands v. County of San Bernardino* (2002) 96 Cal.App.4th 398, 415-416 [*City of Redlands*].) "The party bound by an injunction must be able to determine from its terms what he may and may not do; he cannot be held guilty of contempt for violating an injunction that is uncertain or ambiguous [citation], just as he may not be held guilty of violating a criminal statute that fails to give him adequate notice of the prohibited acts." (*People v. Bestline Products, Inc.* (1976) 61 Cal.App.3d 879, 908)

Here, the challenged order for injunctive relief provides: "U-Haul is precluded from using the facility at 2800 [sic] San Pablo Avenue, Berkeley, CA to rent trucks or trailers that are stored on the premises." According to U-Haul, this language is impermissibly overbroad and ambiguous because it "failed to identify any specific criteria that would distinguish rental activity from other business models such as vehicle 'sharing'" and "largely ignored the Code definition [of automobile rental establishments]."

15

We conclude U-Haul's challenge to the breadth of this injunction fails for the same reason U-Haul's summary judgment challenge failed. Truck and trailer rental is not a complicated concept. It refers to a business or enterprise charging consumers a fee for use on a short-term basis of a truck or trailer stored on the premises of that business or enterprise. The governing BMC definition reflects as much. Thus, even assuming U-Haul is correct in theory that there exists a distinct activity known as truck or automobile "sharing," such theory has no factual underpinnings in this case. As discussed above, the evidence is undisputed (and, indeed, derived from the words of U-Haul's own representatives) that U-Haul's activities at the relevant site, 2100 San Pablo Avenue, whether labeled truck renting or truck sharing, were for all practical purposes the same before and after the preliminary injunction was entered in 2008. There was therefore no need for the trial court to adhere to U-Haul's request for language in the permanent injunction "identify[ing] . . . specific criteria that would distinguish rental activity from other business models such as vehicle 'sharing.' " (See *Cal. Alliance for Utils. Etc. Educ. v. City of San Diego* (1997) 56 Cal.App.4th 1024, 1028-1029 [to state a valid claim, an actual controversy, as revealed by the facts, must exist between the parties].)

Accordingly, we conclude the trial court's order for injunctive relief, interpreted within the context of the record as a whole (*City of Redlands, supra,* 96 Cal.App.4th at pp. 415-416), sufficiently describes the activity U-Haul is heretofore prohibited from engaging in at the site of its Berkeley facility. Quite simply, the trial court's order is reasonably tailored to prevent U-Haul from violating, or circumventing, the zoning ordinance barring the business operation of renting trucks or trailers stored on the premises to consumers at 2100 San Pablo Avenue in Berkeley. Nothing more was required. (*People v. Bestline Products, supra,* 61 Cal.App.3d at p. 908.)

## IV. Did the trial court have discretion to reduce the amount of attorney fees awarded to the City?

On cross-appeal, the City challenges the trial court's decision to reduce by 30 percent the amount of attorney fees it was awarded based upon its finding that the City prevailed on most, but not all, of its claims. The following background is relevant.

16

Following entry of summary judgment in its favor, the City moved for attorney fees in the amount of $130,200 in fees and $8,450.74 in costs pursuant to section 1033.5, subdivision (a)(10) and BMC section 1.26.040. A hearing was held, after which the trial court accepted as reasonable the amount of attorney hours expended by the City on this matter (472 hours), as well as the hourly rate charged by the City's attorneys ($275 per hour for the Deputy City Attorney and $300 per hour for the City Attorney). However, rather than awarding the City the entire amount of fees requested, the trial court applied a 0.3 negative multiplier to reduce this amount to $91,910 (for a total award with costs of $100,360.74), reasoning that the City had achieved only partial success in this litigation.

The City's challenge to the trial court's award is based solely on its finding that the City failed to fully prevail in this litigation. An order awarding the prevailing party attorney fees is generally reviewed for abuse of discretion. (*Graciano v. Robinson Ford Sales, Inc*. (2006) 144 Cal.App.4th 140, 150 [*Graciano*].) In particular, "[a trial] court exercises its discretion to determine 'the prevailing party by analyzing which party realized its litigation objectives.' [Citation.]" (*Graciano, supra*, 144 Cal.App.4th at p. 150.)

Further, the trial court may "reduce the amount of the attorney fees to be awarded where a prevailing party plaintiff is actually unsuccessful with regard to certain objectives of its lawsuit." (*Sokolow v. County of San Mateo* (1989) 213 Cal.App.3d 231, 249.) This equitable apportionment is generally left to the trial court's sound discretion. (*Id*. at p. 248.) "[T]he trial court is to compare the relief awarded on the [parties'] claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources." (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 876 [interpreting the phrase "prevailing party" in Civil Code § 1717, which grants either party the right to recover attorney fees in the event of litigation on the contract].) " 'Typically, a determination of no prevailing party results when both parties seek relief, but neither prevails, or when the ostensibly prevailing party receives only a part of the relief sought.' [Citation.] *By contrast, when the results of the litigation on the [ ] claims are not mixed--that is, when the decision on the litigated [ ]*

17

*claims is purely good news for one party and bad news for the other--the Courts of Appeal have recognized that a trial court has no discretion to deny attorney fees to the successful litigant.*" (*Hsu v. Abbara, supra,* 9 Cal.4th at pp. 875-876 [italics added].)

Having reviewed the record carefully in this case, we conclude this case falls into the latter category – to wit, the results were not mixed but, rather, "purely good news" for the City (*Hsu v. Abbara, supra,* 9 Cal.4th at p. 876) — thus, that the trial court had no discretion to deny the City a portion of its reasonably-incurred attorney fees. In reaching this conclusion, we first note that U-Haul's cross-complaint was dismissed in its entirety with the result that U-Haul "[took] nothing" by way of it. In addition, the City thereafter prevailed on its request for a permanent injunction prohibiting U-Haul from operating its truck and trailer rental facility at 2100 San Pablo Avenue. Specifically, the judgment states that "[U-Haul and Amerco] are permanently enjoined and precluded from using the facility at 2100 San Palo Avenue, Berkeley, California, to rent trucks or trailers that are stored on the premises." As the verified amended complaint reflects, that is exactly the relief the City sought to achieve by filing this lawsuit: "[T]he City prays for relief as follows: [¶] 1. For this Court's interim and permanent injunctions ordering [U-Haul] to abate the public nuisance at 2100 San Pablo Avenue by ceasing its the [sic] truck and trailer rental business, as well as any other business or use not permitted as of right by BMC Chapter 23E.64, as determined by the Zoning Officer."

In finding, to the contrary, that the City achieved only partial success, the trial court reasoned that "The order [granting the City's summary judgment motion] of January 4, 2012, concerned U-Haul's operations as of late 2008 but made no finding that U-Haul's operations as of 2011 or 2012 were unlawful. [Citation.] The resulting judgment therefore instructs that U-Haul cannot conduct its business as it did in 2008-2009, but does not, and could not, address U-Haul's current business practices." As such, the trial court concluded that, "given that [the City] did not present evidence regarding U-Haul's current practices, the Court cannot fully accept the City's [sic] that the degree of success should be considered as 100 percent. Rather, under the circumstances, the Court

believes it is more appropriate to apply a negative multiplier of 0.3. Therefore, the multiplier adjusted lodestar is $131,300 x 0.7, or $91,910."

We find the trial court's reasoning flawed. The judgment did not address U-Haul's "current business practices" because the City's lawsuit was filed in 2008, when the matter of U-Haul's post-2008 practices was simply not determinable. The lawsuit was thus necessarily concerned with U-Haul's continued violation, at the time the City's complaint was filed, of the zoning ordinance banning truck and trailer rental activities at U-Haul's Berkeley facility. The procedural posturing in this case was such that judgment was not reached until 2012. Nonetheless, the fact that the bulk of the evidence presented related to U-Haul's activities during 2008-2009, around the time the lawsuit was initiated, is not surprising, much less, we believe, indicative of the degree of the City's success. Injunctive orders are supposed to be limited in scope to the subject of the litigation. (*City of Redlands, supra,* 96 Cal.App.4th at p. 415.) At the same time, however, injunctive relief is, by nature, forward-looking: "The 'purpose of a prohibitory injunction is to *prevent future harm* to the applicant by ordering the defendant to refrain from doing a particular act. [Citations.] Consequently, injunctive relief lies only to prevent threatened injury and has no application to wrongs that have been completed. [Citation.] [However,] [i]t should neither serve as punishment for past acts, *nor be exercised in the absence of any evidence establishing the reasonable probability the acts will be repeated in the future*.' ([Citation], italics added.)" (*Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2005) 129 Cal.App.4th 1228, 1266 [additional italics added].) There is no dispute the City met the legal requirements for obtaining injunctive relief in this case. As such, we can conceive of no legal basis for reducing the City's attorney fee award based on its failure to offer evidence relating specifically to U-Haul's "current business practices" as of 2011 or 2012.

In reaching this conclusion, we acknowledge that the trial court declined to include in the judgment the language from the City's verified amended complaint requesting that U-Haul be enjoined from operating, not just a truck and trailer rental business at 2100 San Pablo Avenue, but also "any other business or use not permitted as

19

of right by BMC Chapter 23E.64, as determined by the Zoning Officer." This omission, to some degree, reflects a limitation on the scope of the City's recovery. Nonetheless, when the record in this lengthy litigation is considered as a whole, we are still left with the conclusion that the City achieved its principle litigation objective of enforcing against U-Haul the zoning ordinance prohibiting operation of a truck and trailer rental business at 2100 San Pablo Avenue. As such, we find no basis for limiting the City's award of all attorney fees reasonably incurred in its efforts to achieve this objective. As our appellate colleagues in the Fourth District, Division One, have aptly noted: " 'In assessing litigation success, *Hsu v. Abbara* (1995) 9 Cal.4th 863, 877 [. . . ] . . . instructs: "[C]ourts should respect substance rather than form, and to this extent should be guided by 'equitable considerations.' For example, a party who is denied direct relief on a claim may nonetheless be found to be a prevailing party if it is clear that the party has otherwise achieved its main litigation objective." [Citations.]' [Citation.]" (*Graciano, supra*, 144 Cal.App.4th at p. 151.) Accordingly, we return this matter to the trial court to issue a new attorney fee award consistent with the opinions reached herein.

## DISPOSITION

The orders of the trial court sustaining the City's demurrer to the Cross-Complaint, granting the City's motion for judgment on the pleadings with respect to U-Haul's first, second and fifth affirmative defenses, and granting the City's motion for summary judgment are affirmed. The trial court's order awarding the City $91,910.00 in attorney fees is reversed, and the matter is remanded with directions to issue a new attorney fee award consistent with the opinions reached herein. The City may recover costs on appeal.

20

_____
Jenkins, J.

We concur:

_____
McGuiness, P. J.

_____
Pollak, J.